# CHARLESTON.

LAWRENCE v. BARLOW *et al.*

Submitted November 16, 1915.   Decided December 7, 1915.

HABEAS CORPUS—*Right to Remedy—Insane Person—Restoration to Sanity—Custody of Bondsmen.*

Any person confined in one of the hospitals for the insane, of this state, as an insane person, ''except in the case of a person charged with crime and subject to be tried therefor, or convicted of a crime and subject to be punished therefor, when in a condition to be so tried and punished'', may be delivered to any friend who will give bond and security with the conditions mentioned in section 10, chapter 58 of the Code of West Virginia.   If such insane person shall be restored to sanity while in the custody of such bondsmen, it is the duty of the persons having control of such hospital to discharge him from such custody and give him a certificate thereof. If the persons in charge of such hospital fail or refuse to release such person from custody, after reasonable demand, the writ of habeas corpus is a proper remedy to secure such release.

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Roane County.

Habeas corpus by S. W. Lawrence against Charles A. Barlow, Superintendent, etc., and others.   Judgment for defendants, and petitioner brings error.

*Reversed, and petitioner released.*

*Geo. F. Cunningham,* and *Neal & Strickling,* for plaintiff in error.

*A. A. Lilly,* Attorney General and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for defendants in error.

MASON, JUDGE:

The appellant, S. W. Lawrence, having been arrested in Tyler County, W. Va., and by a justice of the peace of that county adjudged to be a lunatic was committed to the Hospital for the Insane at Weston, and later transferred from that hospital to the Second Hospital for the Insane, at Spencer, W. Va., on the 25th day of August, 1913.   Some questions are

raised by the appellant as to the legality of the proceedings before the justice, but the view we take of the case makes it unnecessary to pass upon them.

The appellant remained in the hospital at Spencer until the 25th day of November, 1913, when he was released on ·bond, but was returned by the bondsmen, December 17, 1913. On the 31st day of January, 1914, he was again released on bond, and has not since that time been confined in or returned to the hospital. After executing the last named bond, Lawrence says he attempted to secure a discharge from the hospital; that he furnished numerous certificates of doctors, neighbors, and friends as to his sanity; but that the authorities refused to discharge him. Thereupon he presented to the judge of the circuit court of Roane County, in vacation, August 29, 1914, his petition for a writ of habeas corpus, and an order was entered requiring the defendants to bring before the judge of the circuit court of Roane County, at the court house of said county, the body of the said Lawrence, and to make return to said writ, setting forth the cause of the detention of said Lawrence. On the 15th day of September the defendants appeared, demurred to the petition, and moved to quash the writ; and answered, alleging that the petitioner was not in their custody nor under their control; that he was delivered by the superintendent of the hospital to certain bondsmen of said Lawrence on the 31st day of January, 1914, who executed bond as provided by law; and that he has since that time and is now under the restraint and control of said bondsmen; and that they are, therefore unable to produce him. The defendants also say that said Lawrence was legally committed to said hospital; that he was insane when he was received into said hospital; that he was insane when released on bond; and that he is still insane. Respondents suggest in their return to the writ, that the petitioner should have proceeded against the board of examiners of the hospital for a certificate showing that he was not insane. It does not appear who constituted the board of examiners for said Hospital No. 2, or that there was any law in force at that time authorizing the appointment of a board of examiners.

But inasmuch as Lawrence demanded of the proper persons

to release him from the hospital and was refused for the reason that he was still insane, and that the superintendent and assistant superintendent both testify that he is insane, and further because the respondents say in their return to the writ, ''that the said Lawrence is still insane and ought not to be discharged from said Second Hospital'', we think that Lawrence did all that was necessary he should do, preliminary to instituing this proceeding.

We now approach the two important and controlling questions in this case:

First: Was the petitioner deprived of his liberty while in the custody of his bondsmen? If not, he is not entitled to the writ of habeas corpus. It will be conceded that if he was confined in the hospital on account of insanity, and that he was restored to sanity, and the authorities in control of the hospital should refuse to discharge him, he would be entitled to the writ of habeas corpus. Now, does the fact that he was out of the asylum on bond—furloughed—liable to be returned at any time, make any difference? Counsel for respondents argue at length to show that a person who is confined in an asylum, and released upon bond under the statutes of this state, is no more restrained of his liberty than is a person who has been released from custody on bond in a criminal prosecution, and ''that persons discharged on bail are not restrained of their liberty so as to be entitled to discharge on habeas corpus.'' The defect in this argument is that the conditions are different. A person who is released on bail in a criminal prosecution is as free to go where he pleases, to make contracts, and to engage in business, as though no criminal proceedings were pending against him. He has the same control over his person and property that he had before the proceedings against him were begun. But the condition of a person on bond from an insane asylum is quite different. The effect of the sentence of insanity follows him wherever he goes. He has no control over his property; all his contracts are subject to judicial inquiry. And these disabilities are the same whether he is confined in a hospital, or delivered by the persons in charge of the hospital to persons who are under bond to restrain him.

The fact that a person adjudged insane and confined in a

hospital for the insane is not relieved of the sentence by being released from the hospital upon bond, will be very apparent by·an examination of our statutes. A person who has been adjudged insane by a justice of the peace and confined in one of the hospitals for the insane, should be released when restored to sanity as an official. act on the part of the persons in control of the hospital. In such case he would be restored to all his civil rights; or, while he is still insane, he may be delivered to a friend who will give security with conditions to restrain and take proper care of him until the cause of the confinement shall cease or he be delivered to the sheriff of the county to be proceeded with according to law. Under these circumstances it will be perceived that the insane person is as much a prisoner as he was while inside the hospital walls. The delivery of his person to bondsmen does not restore his civil rights, or relieve him in the slightest degree from the disabilities under which he was placed by the justice of the peace who decided that he was insane. The condition of the bond is that the bondsmen will "restrain and take proper care of" the lunatic.

If the petitioner has been restored to sanity, is he unlawfully deprived of his liberty? We think he is. "The term 'liberty' as used in the Constitution is not dwarfed into mere freedom from physical restraint of the person of the citizen as by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. Liberty, in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation." *People* v. *Gillson,* 109 N. Y. 398. The above is quoted approvingly in *State* v. *Goodwill,* 33 W. Va. 179. "A person living under the protection of his government has the right to adopt and follow any lawful industrial pursuit, not injurious to the community, which he may see fit. And, as incident to this, is the right to labor or employ labor, make contracts in respect thereto upon such terms as may be agreed

upon by the parties, to enforce all lawful contracts, to sue, and give evidence, and to inherit, purchase, lease, sell, and convey property of every kind. The enjoyment or deprivation of these rights and privileges constitutes the essential distinction between freedom and slavery; between liberty and oppression. These principles have been fully recognized and announced in many decisions of the Supreme Court of the United States, and other courts. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Slaughter-House Cases,* 16 Wall. 36; *Butchers' Union Co.* v. *Crescent City, etc., Co.,* 111 U. S. 746; *In re Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 377; *Ex parte Westerfield,* 55 Cal. 550; *Ragio* v. *State,* 86 Tenn. 272; *State* v. *Divine,* 98 N. C. 778." *State* v. *Goodwill,* 33 W. Va., *supra.*

The petitioner can be restored to his civil rights only by the removal of the sentence of insanity standing against him. So that if the petitioner has been restored to sanity, he is being "detained without lawful authority", and the writ of habeas corpus will lie.

Second: Does the evidence show that the petitioner has been restored to sanity? The trial court thought not. The finding of the circuit court was to a certain extent based upon conflicting oral evidence, and this court will not disturb its finding unless there is a preponderance of evidence in favor of the appellant. Many witnesses were examined in relation to the sanity of the petitioner. We shall not attempt to reconcile the theories or statements of the witnesses; nor would a discussion of the different theories be profitable at this time. The physicians called by the defendants say that Lawrence is afflicted with a disease known to the profession as paranœa. They say the disease is progressive and incurable. Dr. Barlow, the superintendent of the hospital, thinks that Lawrence has been suffering from this disease since 1887. But it is said that this theory is repelled by the fact that Lawrence was in an insane asylum at Warren, Pennsylvania, in 1887, and released as restored; that he was again in the hospital at Weston in 1895, and in an insane asylum in California for a short period in 1902, and again released as restored; and that he was not afflicted this way again until 1913; and that during the lucid periods he was a good citizen and prosperous business man; that he was released on bond

from the hospital in January 1914, and his trial was had in November 1914; and that he was out of the hospital about ten months without injury to himself or the community. From this undisputed history, it would seem that the hospital doctors are mistaken in their diagnosis, or in the progressive nature of the disease. But without discussing or calling into question the correctness of their theories, it is quite certain that there is abundant reliable testimony in the case to show conclusively that if the petitioner was insane when he was committed to the hospital in 1911, that he had been sufficiently restored at the time of the trial on the habeas corpus proceeding to make it improper to continue him in confinement. Should the theory of the hospital physicians prove correct, and the malady from which they say he is suffering progress until it shall reach the stage that he will be unable to care for himself or his property, and it shall become necessary for some one to care for him, then the hospital for the insane provided for such purpose by the state will be to him a haven of mercy; until then it would be a place of torment.

We are therefore of opinion to reverse the judgment of the circuit court dismissing the habeas corpus proceedings, and enter an order here releasing the petitioner.

*Reversed, and petitioner released.*