MARTHA MAJOR

*v.*

GEORGE DEFRENCH, *etc., et al.,*

AND CITY OF MORGANTOWN, *etc.*

(No. 15096)

Decided February 4, 1982.

*Franklin Cleckley* for appellant.

*Mike Magro, Jr.*, for appellees.

MCGRAW, JUSTICE:

The appellant, Martha Major, appeals from a decision of the Circuit Court of Monongalia County which found that

she was lawfully terminated from her position as a police officer for the City of Morgantown at the end of her probationary period, and was therefore not entitled to a written notice of the reasons for termination of her employment, or a hearing in which she could contest her dismissal. The appellant contends the decision of the circuit court is erroneous because, as a matter of law, her employment was not terminated at the end of her probationary period. The appellant further contends that even if she was legally dismissed at the end of her probationary period, due process requires that before her employment can be terminated, she must receive written notice of the grounds for her dismissal, an adversarial hearing, and the right to be represented by counsel. Because we find that the appellant was dismissed without the procedural protections required by law, we reverse the decision of the circuit court.

The appellant first applied for employment as a Morgantown police officer on January 17, 1977; she took the written civil service examination on February 2, 1977. Two weeks later, the city notified her that she had passed the exam with the second highest score. In compliance with department rules and statutes, the appellant took a physical examination and was personally interviewed by the all-male Morgantown Civil Service Commission. During the month of June 1977, two males were hired as Morgantown police officers. The City of Morgantown has never hired a female police officer.

The appellant filed a gender-based complaint with the Civil Rights Division of the U.S. Treasury's Revenue Sharing Funds Department. In early January, 1978, the appellant and the City of Morgantown were informed by the Treasury Department of its determination that the city had refused to hire petitioner on the basis of sex and that she was entitled to immediate hiring and back pay from "June 31, 1977." The city insisted that the back pay date be amended to August 11, 1977, the date the appellant's name was removed from the list of eligibles. *See* W. Va. Code § 8-14-15 (1976 Replacement Vol.).

On February 8, 1978, appellee DeFrench wrote a letter to appellee Bennie F. Palmer instructing him to hire the appellant. On February 16, 1978, the appellant began work as a police officer for the City of Morgantown. On April 18, 1978, the Morgantown City Council authorized back pay from August 11, 1977 through February 15, 1978 in the amount of $2,934.26.

The appellant continued to work for the city from February 16, 1978 until November 15, 1978. She received a letter dated November 14, 1978 terminating her employment with the city because her performance as a probationary officer, in the words of the city, was not "acceptable." She requested and received a hearing before the Police Civil Service Commission on December 15, 1978. At the hearing, the appellant moved that she be reinstated because the city had failed to give her notice of specific charges for her termination. The commission agreed and ordered her reinstated with back pay.

That evening, she received a letter dated December 15, 1978 advising her that she was once again terminated. This time, DeFrench and Palmer listed eight reasons for her termination including poor uniform discipline; criticizing fellow officers and members of the Sheriff's Department; disregarding orders; assisting persons arrested; and falsification of Federal Aviation Regulation 121.585.

The appellant again requested and received a hearing before the Police Civil Service Commission, held on January 12, 1979 and January 23, 1979. On February 9, 1979, the commission determined that the city had not proved the charges and again ordered the appellant reinstated with full back pay. On February 9, 1979, the appellant, at the request of her attorney, contacted DeFrench about her return to work. DeFrench informed her that he had told Palmer not to rehire her because the city was not satisfied with the commission's decision.

The appellant then received another letter on February 15, 1979, informing her that she was terminated at the end of her probationary period. No further action was

taken on this letter, because on February 18, 1979, the appellant filed a writ of mandamus in the Circuit Court of Monongalia County requesting immediate reinstatement with back pay.

On March 26, 1979, pursuant to an oral order of Judge DePond, Martha Major returned to work as a police officer for the City of Morgantown. By order dated March, 30, 1979, the court ruled that the city's refusal to reinstate the appellant on February 9 was illegal, and that she was entitled to reinstatement and back pay from December 15, 1978.

Appellant received yet another letter, dated March 30, 1979, advising her that her employment was being terminated at the end of her probationary period, effective March 31, 1979.[1] On April 13, 1979, the appellant instituted a civil action against the City of Morgantown and its officials for wrongfully terminating her employment as a police officer. In her complaint she alleged that the action of city officials terminating her employment was arbitrary, discriminatory, unlawful and a violation of due process. The appellant sought both injunctive relief and damages. The appellees answered, contending the appellant was lawfully dismissed pursuant to W. Va. Code § 8-14-11 (Cum. Supp. 1981), and denied liability. The Circuit Court of Monongalia County, after a non-jury trial, entered judgment against the appellant and in favor of the appellees. The appellant appeals from that decision.

The primary issue presented by this appeal is whether the appellant is entitled to a written statement of the reasons for her dismissal, and the opportunity for a hearing at which her dismissal can be contested. The appellees contend such procedures are not required in this case because the appellant was dismissed at the end

---

[1] Apparently the city is of the opinion that the work performed by the appellant from March 26, 1979 to March 30, 1979 should be substituted for the period of February 9, 1979, the date the appellees refused to rehire the appellant, to February 15, 1979, the date her probationary term should have ended. Therefore the letter of March 30, 1979 was merely a reiteration of the dismissal attempted on February 15, 1979.

of her one year probationary appointment, and neither the constitution nor the applicable statutes require a hearing prior to dismissal of probationary employees. The appellant disputes the appellees' contention that her employment was terminated at the close of her probationary period, and argues that in any event, due process requires that she be afforded the opportunity for a hearing.

## I.

The appellees contend the appellant was lawfully dismissed pursuant to the provisions of W. Va. Code § 8-14-11, which provides, in pertinent part:

> All original appointments to any positions in a paid police department subject to the civil service provisions of this article shall be for a probationary period of one year: Provided, that at any time during the probationary period the probationer may be discharged for just cause, in the manner provided in section twenty [§ 8-14-20] of this article. If, at the close of this probationary term, the conduct or capacity of the probationer has not been satisfactory to the appointing officer, the probationer shall be notified, in writing, that he will not receive absolute appointment, whereupon his employment shall cease; otherwise, his retention in the service shall be equivalent to his final appointment.

They argue that the appellant's employment commenced February 16, 1978, and that she was dismissed February 15, 1979 at the end of her probationary period, and therefore no specification of reasons for dismissal, nor a hearing concerning those reasons is necessary. They rely on *Fiedler v. Thackston*, 126 W.Va. 84, 27 S.E.2d 278 (1943), which held: "A probationer of a police department * * * is not entitled to a hearing * * * concerning the reasons for not making his appointment absolute at the expiration of the * * * probationary period." Syllabus, in part, *Fiedler v. Thackston, supra.*

The appellant, on the other hand, contends that she was not dismissed at the end of the one year probationary

period. She argues that her probationary period should be deemed to commence on August 11, 1977, the beginning date of her back pay award. To achieve this result she urges the Court to adopt the "rightful place" doctrine which has evolved in the federal courts as a remedy under the Civil Rights Act. The doctrine requires that "persons aggrieved by the consequences and effects of the unlawful employment discrimination practice be, so far as possible, restored to a position where they would be were it not for the unlawful discrimination." *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444, 461 (1976). The appellant argues that were it not for the discriminatory practices · of the City of Morgantown, she would have been hired August 11, 1977, and therefore her probationary period expired August 11, 1978, well before her dismissal. In such case, she would clearly be entitled to a hearing under the provisions of Code § 8-14-20 (Cum. Supp. 1981).[2]

---

[2] *Code* § 8-14-20 provides, in pertinent part:

No member of any paid police department subject to the civil service provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause, which shall not be religious or political, except as hereinbefore provided in section nineteen [§ 8-14-19] of this article; and no such member shall be removed, discharged, suspended or reduced except as provided by the civil service provisions of this article, and in no event until he shall have been furnished with a written statement of the reasons for such action. In every case of such removal, discharge, suspension or reduction, a copy of the statement of reasons therefor and of the written answer thereto, if the member sought to be removed, discharged, suspended or reduced desires to file such written answer, shall be furnished to the policemen's civil service commission and entered upon its records. If the member sought to be removed, discharged, suspended or reduced shall demand it, the commission shall grant him a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur. At such hearing the burden shall be upon the removing, discharging, suspending or reducing officer, hereinafter in this section referred to as "removing officer," to show just cause for his action, and in the event the removing officer fails to show just cause for his action before the commission, then the member removed, discharged, suspended or reduced shall be reinstated

In the alternative, the appellant argues that her probationary period had not yet expired at the time of her dismissal, and therefore she is entitled to a hearing under the provisions of W. Va. Code § 8-14-11. She bases this argument on the view that probationary periods in civil service statutes should be measured by time actually spend on the job.

Probationary periods of employment in civil service statutes have been judicially recognized as serving a dual purpose. First, they provide the employer an adequate time to evaluate the employee's job performance before a decision is made on permanent employment. *See, e.g., Levin v. Department of Education,* 393 So.2d 626 (Fla. 1981); *State ex rel. Swartout v. Civil Service Commission,* 25 Wash. App. 174, 605 P.2d 796 (1980). Second, they insure that the probationer has an ample opportunity to adapt to her duties and improve her performance before the employer makes a decision on permanent status. *See, e.g., Tuller v. Central School District,* 40 N.Y. 2d 487, 354 N.E.2d 826, 387 N.Y.S. 2d 87 (1976).

Some authorities state that as a general rule the date of appointment to a civil service position marks the commencement of the probationary period. *See, e.g., State ex rel. Rieke v. Hansrod,* 67 Ohio St. 2d 337, 423 N.E.2d 869 (1981); *Rose v. Washington State Dept. of Social and Health Services,* 23 Wash. App. 265, 594 P.2d 1386 (1979); *Annot.,* 131 A.L.R. 383, 387 (1941); 15A Am. Jur. 2d *Civil Service* § 34 (1976). However, there is authority that the period of probationary employment should run from the date the probationer actually begins work. *See People ex*

with full pay, forthwith and without any additional order, for the entire period during which he may have been prevented from performing his usual employment, and no charged shall be officially recorded against his record. The member, if reinstated or exonerated, shall, if represented by legal counsel, be awarded an attorney fee of no more than two hundred fifty dollars and such fee shall be determined by the commission and paid by the governing body. A written record of all testimony taken at such hearing shall be kept and preserved by the commission, which record shall be sealed and not be open to public inspection, if no appeal be taken from the action of the commisison.

*rel. Sterba v. Blaser*, 33 Ill. App. 3d 1, 337 N.E.2d 410 (1975); *Maggio v. Department of Public Safety*, 234 So.2d 844 (La. 1970); *People ex rel. O'Grady v. Low*, 74 A.D. 246, 77 N.Y.S. 661 (1902). In light of the recognized purposes of probationary periods of employment we believe this to be the better view. We therefore reject the appellant's argument that her probationary term began August 11, 1977. Rather we hold that the probationary period of employment mentioned in W. Va. Code § 8-14-11 commences when the probationer actually begins work. Accordingly, the appellant's probationary period of employment began February 16, 1978, the date she was sworn in and assumed the duties of police officer for the City of Morgantown.

In the usual case the probationary period will expire one year from the date it commences. However, in order to fulfill the purposes for which the probationary period was designed, it is necessary for the probationer to engage in actual service for the full probationary term. *See McCabe v. Spokane County Civil Service Comm'n*, 14 Wash. App. 864, 545 P.2d 575 (1976). Consequently, where the probationer is prevented from serving the full probationary period by forces beyond his or her control, the probationary period must be extended to provide the probationer, as well as the employer, the full benefit of the probationary period. *See McCabe v. Spokane County Civil Service Comm'n, supra*; *McVay v. New York*, 116 N.Y.S. 908 (1906).

That this result was intended by the Legislature is evident from the provisions of W. Va. Code § 8-14-11. The statute provides that the appointing officer may not remove a probationary employee during the one year probationary term without complying with the procedural protections of W. Va. Code § 8-14-20, including furnishing the probationer a written statement of the reasons for her removal, and an opportunity for a hearing. It is only at the end of the probationary period that the statute purportedly permits dismissal without a written statement of reasons and without a hearing. The protections afforded to the employee during the probationary term

indicate that the Legislature intended probationary civil service employees to have the full benefit of the one year probationary period in order to prove themselves capable of the job, and to give the appointing authority an opportunity to fully evaluate the probationer's job performance. *Accord, Commonwealth ex rel. Lisk v. Davis,* 126 Pa. Super. Ct. 136 190 A. 403 (1937).

In this case the appellant began work as a Morgantown police officer on February 16, 1978. She continued her work until November 15, 1978, when she was dismissed from her duties by the appellees. This dismissal was determined by the Civil Service Commission to be without cause, and the appellees were ordered to reinstate the appellant. The appellees refused to comply with this order. Instead, they again tried to dismiss the appellant on February 15, 1979, the date her probationary period would normally have expired. However on February 15, 1979, the appellant had only worked for a period of nine months; her one year probationary period had not yet expired, and consequently she was entitled to the procedural protections of W. Va. Code §§ 8-14-11 and 8-14-20. Thus the finding of the circuit court that the appellant was lawfully dismissed at the end of her probationary period without reason being given and without the opportunity for a hearing, is erroneous. A probationary police civil service employee who has not served the full one year probationary term specified in W. Va. Code § 8-11-14 cannot be dismissed without the procedural protections of W. Va. Code § 8-14-20.

## II.

We have found that the appellant's probationary period had not expired at the time of her dismissal and therefore she is entitled to notice of the charges against her and an opportunity for a hearing to contest those charges. Our holding is founded upon the provisions of W. Va. Code §§ 8-14-11 and 8-14-20 which accord these procedural protections to a probationary employee during the probationary term.

However, even if the appellant had been dismissed at the end of her probationary period, we believe she still would have been entitled to procedural protections designed to insure the rationality of the decision regarding her continued employment. This result is dictated by the due process clauses of the United States and West Virginia Constitutions.

The United States and West Virginia Constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. W. Va. Const. art. 3 § 10; U.S. Const. amend. XIV. It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards. *See generally, Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Because we find that a police civil service employee who has completed a one year term of probationary employment has both a "property" and a "liberty" interest in continued employment, the state must afford the employee due process protection before employment can be terminated.

## PROPERTY INTEREST

A "property" interest protected by due process must derive from private contract or state law, and must be more than a unilateral expectation of continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978); *Waite v. Civil Service Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977).

The property interest of a civil service employee who has completed the probationary period of employment flows from the provisions of W. Va. Code § 8-14-11. The pertinent portions of the statute specify that "[i]f at the close of [the one year] probationary term, *the conduct or*

*capacity of the probationer* has not been satisfactory to the appointing officer, the probationer shall be notified, in writing, that he will not receive absolute appointment, whereupon his employment shall cease . . . ." (Emphasis added.)

We agree with the appellant's contention that the statute requires, by its reference to "conduct and capacity," that the decision on the continued employment of a probationer is to be based on the employee's job performance and abilities, and creates in the employee a reasonable expectancy that if she has satisfied all the eligibility requirements and has performed well on the job, her employment will be continued.

This situation is directly analogous to that in *State ex rel. McLendon v. Morton, supra.* In *McLendon* this Court held that "[a] teacher who has satisfied the objective eligibility standards for tenure adopted by a State college has a sufficient entitlement so that he cannot be denied tenure on the issue of his competency without some procedural due process." Syllabus Point 3, *State ex rel. McLendon v. Morton, supra.*

The "objective eligibility requirements" of *McLendon* were found in the college's regulations and a Board of Regents Policy Bulletin. These requirements provided that all employees who held the rank of Assistant Professor or above could apply for tenure at the end of a six-year probationary period, and that their applications would be evaluated by the appropiate committee.

On the basis of these regulations we concluded:

> Professor McLendon had more than a unilateral expectation of tenure. With her rank of Assistant Professor, six years of teaching service and full-time employment in academic teaching, she met the eligibility criteria to make application for tenure. This does not mean, however, that she was automatically entitled to obtain tenure status. Both the Board's Bulletin and the College's regulations indicate that teaching competency is a further criterion for obtaining tenure. Compe-

tency involves an evaluation of a teacher's total professional skills. It is the basis substantive issue once the objective eligibility requirements are met.

"However, satisfying the objective eligibility standards for tenure gave Professor McLendon a sufficient entitlement so that she could not be denied tenure on the issue of her competency without some procedural due processs." 249 S.E.2d at 925.

The eligibility criteria which a police civil service employee must satisfy for consideration as a permanent employee are contained in the applicable civil service statutes. They include a formal application, W. Va. Code § 8-14-12; the completion of a competitive and medical examination, W. Va. Code § 8-14-11; appointment, W. Va. Code § 8-14-15; and service for a one year probationary term; W. Va. Code § 8-14-11. As we noted in *McLendon, supra,* satisfaction of these eligibility requirements does not mean that the employee is automatically entitled to permanent status. However satisfaction of the eligibility criteria does provide the employee with a sufficient interest that she cannot be denied permanent status on the issue of her conduct and capacity without some procedural due process.

That the constitution requires such a result is implicit in our decision in *Airhart v. Carpenter,* ____ W.Va. ____, 260 S.E.2d 729 (1979). There we recognized that a civil service employee cannot be dismissed at the conclusion of his probationary term without some procedural protection indicating the reasons for his dismissal. In *Airhart* a probationary deputy sheriff was advised by the sheriff at the conclusion of his six month probationary period, that his conduct and capacity had not been satisfactory and that he would not receive a permanent appointment.[3] The

---

[3] W. Va. Code § 2-14-7 (1976 Replacement Vol.) provides, in pertinent part:

All original appointments on and after the effective date of this article [July 1, 1971], to any position of deputy sheriff in any county subject to the provisions of this article shall be for a

deputy requested, and was granted a hearing before the Civil Service Commisison. The commission held that a probationary deputy sheriff must be afforded the minimum statutorily required training period before he may be dismissed at the end of his probationary period, and reinstated the deputy. The sheriff appealed to circuit court which reversed the commission. On appeal of the circuit court decision we held that it would be improper to terminate the employment of the deputy if the reasons for the termination are related to a lack of training and the deputy has not been provided a training program as required by statute. However the record did not reveal the reason for the deputy's dismissal, and we therefore remanded the case with the direction that "there must be development of facts indicating the reasons for the [deputy's] dismissal." 260 S.E.2d at 730.

## LIBERTY INTEREST

It has long been recognized that one of the liberty interests protected by due process is a person's interest in the pursuit of a lawful occupation. *See, e.g., Meyer v. Nebraska*, 262 U.S. 390 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *State v. Memorial Gardens Dev. Corp.*, 143 W.Va. 182, 101 S.E.2d 425 (1957); *Lawrence v. Barlow*, 77 W.Va. 289, 87 S.E. 380 (1915). Thus this and other courts have consistently protected people from arbitrary state interference with their right to pursue a lawful occupation by demanding procedural regularity from government when it licenses private employment. *See, e.g., Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (State cannot deny application for bar

---

probationary period of six months: Provided, that at any time during the probationary period the probationer may be discharged for just cause, in the manner provided in section seventeen [§ 7-14-17] of this article. If, at the close of this probationary period, the conduct or capacity of the probationer has not been satisfactory to the appointing sheriff, the probationer shall be notified, in writing, that he will not receive absolute appointment, whereupon his employment shall cease; otherwise, his retention in the position of deputy sheriff beyond the probationary term shall be equivalent to his absolute appointment.

admission without a due process hearing); *accord, In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *see also, Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); (government cannot arbitrarily withdraw security clearance of civilian employed by private contractor); *Pushinsky v. Board of Law Examiners,* ____ W.Va. ____, 266 S.E.2d 444 (1980) (Board could not arbitrarily refuse to process bar applications); *Kisner v. Public Service District,* 163 W.Va. 565, 258 S.E.2d 586 (1979) (PSC could not reduce number of vehicles that common carrier permitted to operate without hearing).

The due process concerns for fair, rational decision-making and for protection of the right to pursue lawful occupations merge when, as in the case of probationary police civil service employees, an individual seeks retention in public employment. Because government is the employer in such cases, there will necessarily be a state-derived decision directly affecting an individual's ability to pursue her chosen occupation.

This Court has traditionally shown great sensitivity toward the due process interests of the government employee by requiring substantial due process protections and imposing rational decision-making on the state employer. *State ex rel. McLendon v. Morton, supra,* required a state university to provide stringent procedures before it could refuse retention for a non-tenured professor. *Waite v. Civil Service Comm'n, supra,* recognized that a state employee had protected due process interests in even a ten day suspension from her job. *State ex rel. Bowen v. Flowers,* 155 W.Va. 389, 184 S.E.2d 611 (1971), required a hearing on the suspension of a pharmacist from a pharmaceutical program administered by the Department of Welfare. *State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 136 S.E.2d 783 (1964), held that a licensed physician was entitled to a hearing on his denial from a staff position at a city hospital. The city was arbitrary in not providing the doctor with reasons and a hearing. *See also Airhart v. Carpenter, supra.*

While not all of these cases applied a liberty interest rationale, they collectively identify a genuine constitutional concern about arbitrary decisions made at the expense of public employees. The protection afforded by these decisions, and by the private employment-licensing cases cited above, extends beyond traditional contract law. Rather they implicitly recognize a due process interest in continued public employment and in freedom from an arbitrary non-retention devoid of protective procedures.

This liberty interest in continued public employment encompasses two of the employee's most basic interests, her good name and her prospects for future employment. Thus the government cannot dismiss an employee on charges that call into question her good name, or that impose a stigma upon an employee which could foreclose her freedom to pursue other employment opportunities, without providing the employee notice of the charges against her and a hearing in which the factual basis of the charges can be contested. *Board of Regents v. Roth, supra*; *North v. West Virginia Board of Regents, supra.*

The instant case well demonstrates the need for such procedural protection. The appellees have obviously shown an arbitrary hostility towards the appellant at every stage of her efforts to become a permanent police officer for the City of Morgantown. Appellees' initial refusal to hire the appellant, despite her score on the civil service examination, was found by an agency of the federal government to have been based on unlawful sex discrimination. Appellees next attempted to terminate the appellant before her probationary period ended, but they were found by a review commission to have acted without just cause. Appellees then tried twice to terminate the appellant on the theory that her probationary term was over and that they were free to act in the arbitrary and discriminatory manner that they had been trying to engage in throughout the case. To deny procedural protections to policewomen in these circumstances would be an affront to "liberty" and to the due process clause.

Requiring procedural regularity in the decision on retention of a probationary police civil service employee is also consistent with the design of the civil service act. The statutes are remedial in nature. They are designed to give security to municipal police employees against the vicissitudes which always attend, in the absence of protective statutes, political municipal elections. *Dougherty v. City of Parkersburg*, 138 W.Va. 1, 76 S.E.2d 594 (1952). Moreover, the statutes clearly provide that appointments shall be based solely on the merit and fitness of the candidates, W. Va. Code § 8-14-15, and that the decision on retention of a probationer shall be based on the conduct or capacity of the employee. W. Va. Code § 8-14-11. Thus one of the intentions of the police civil service act is to improve the quality of municipal police departments by filling positions with the most meritorious person. *See, e.g., Gartin v. Fiedler*, 129 W. Va. 40, 38 S.E.2d 352 (1946). This purpose would be frustrated if the appointing officer has unbridled discretion to make arbitrary employment decisions. Accordingly, the police civil employee who has satisfied all the eligibility criteria for permanent appointment must be accorded procedural protections in order to further the purposes of the police civil service act.

We therefore hold that a police civil service employee who is dismissed at the end of her probationary term is entitled, by virtue of her property and liberty interests in continued employment, to procedural protections designed to insure the rationality of the decision on continued employment.

## THE EXTENT OF DUE PROCESS PROTECTIONS

The specific procedural protections accorded to a due process liberty or property interest generally requires consideration of three distinct factors: first, the private interest that will be affected by state action; second, the risk of an erroneous deprivation of the protected interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and third, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements

would entail. *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Waite v. Civil Service Comm'n, supra.* Applying the first factor it is apparent that the private interest of a police civil service employee who has completed the statutory one year probationary term is of considerable importance. Permanent appointment as a police office is a substantial right which guarantees the employee job security, and enables her to function as an officer without fear of arbitrary treatment from superiors.

Applying the second factor, the standard contained in W. Va. Code § 8-14-11 requires the appointing officer to base his decision on the conduct and capacity of the probationer. This standard is designed to prevent an erroneous or arbitrary decision. Procedural protections can only help but insure that this design is realized, and reduce the risk of an erroneous deprivation of the probationer's protected interests.

Finally, the government's interest in avoiding any increased fiscal or administrative burden of required procedural protections is minimal, when considered in light of the benefits that will inure to the city as a result of due process requirements. The city has a substantial interest in determining that only competent and qualified police officers are given permanent status. Procedural requirements can only help but insure that a fair and accurate decision is made, and that the best qualified and most competent officers are retained for permanent employment. Moreover, a city within the scope of the police civil service act already has in place the necessary procedural apparatus to insure correct and fair employment decisions through its Police Civil Service Commission.

The same procedural protections which are afforded a probationary employee during his probationary term are required upon non-retention of the employee at the conclusion of the probationary term. These procedures include the right to a written notice of the reasons for the action taken against the employee, and the opportunity for an adversarial hearing. *See* W. Va. Code § 8-14-20.

These procedures insure that a fair and correct decision is made, and benefit the city in that they insure that permanent positions on the police force will be filled by the most qualified candidate.

Accordingly we hold that a police civil service employee who is dismissed from employment at the end of her probationary term, is entitled to the procedural protections set out in W. Va. Code § 8-14-20. To the extent that *Fiedler v. Thackston, supra,* is inconsistent with our holding today, it is hereby overruled.

For the foregoing reasons the decision of the Circuit Court of Monongalia County is reversed and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*