590 S.E.2d 691

The Honorable Emmitt S. PUGH, III, in his official capacity as Mayor of the City of Beckley, Petitioner Below, Appellee,

v.

The POLICEMEN'S CIVIL SERVICE COMMISSION OF the CITY OF BECKLEY, Doug Epling, John White, and James A. Davis, duly appointed commissioners of the Policemen's Civil Service Commission for the City of Beckley, Respondents Below.

and

Sergeant Wesley C. Bowden, Respondent Below, Appellant.

and

The Honorable Emmitt S. Pugh, III, in his official capacity as Mayor of the City of Beckley, Petitioner Below, Appellee,

v.

The Policemen's Civil Service Commission of the City of Beckley, Doug Epling, John White, and James A. Davis, duly appointed commissioners of the Policemen's Civil Service Commission for the City of Beckley, Respondents Below, Appellants.

and

Sergeant Wesley C. Bowden, Respondent Below.

No. 31232, 31233.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Dec. 3, 2003.

Concurring Opinion of Justice Davis Dec. 4, 2003.

Concurring and Dissenting of Justice McGraw Dec. 5, 2003.

Davis, J., filed concurring opinion.

McGraw, J., filed opinion concurring in part, and dissenting in part.

Bernard A. Greer, Esq., Beckley, West Virginia, Attorney for Emmitt S. Pugh, III.

Mark Matkovich, Esq., Law Office of the City Attorney, Beckley, West Virginia, Attorney for the City of Beckley.

Benny G. Jones, Esq., Beckley, West Virginia, Attorney for Sgt. W.C. Bowden.

Forrest H. Roles, Esq., Mark A. Carter, Esq., Denise Lynn Avampato, Esq., Dinsmore & Shohl, Charleston, West Virginia, Attorney for The Policemen's Civil Service Commission, Doug Epling, John White and James A. Davis.

PER CURIAM:

As chief executive officer of the City of Beckley, Mayor Emmitt S. Pugh, III, filed a petition seeking to prohibit the Policemen's Civil Service Commission for the City of Beckley from investigating whether a vacan-

cy existed in the City of Beckley's Police Department.

The Raleigh County Circuit Court granted Mayor Pugh's petition barring the Policemen's Civil Service Commission from investigating whether a vacancy existed in the City's Police Department. Sergeant Wesley C. Bowden and the Policemen's Civil Service Commission appealed the circuit court's order granting a writ of prohibition. We reverse the circuit court's order, in part, and affirm it, in part.

## I.

Sergeant Wesley C. Bowden, a twenty-one-year member of the City of Beckley's Police Department, has held the rank of sergeant for more than four years. On April 18, 2002, Sergeant Bowden filed a "Petition for Promotion to Lieutenant" with the Policemen's Civil Service Commission for the City of Beckley ("the Commission"). In his petition, Sergeant Bowden alleged that a lieutenant had recently resigned from Beckley's Police Department, thereby, creating a vacancy in a lieutenant's position and that he, Sergeant Bowden, was the most qualified candidate. Sergeant Bowden requested that the Commission order the chief of Beckley's Police Department to promote him to the rank of lieutenant.

On May 2, 2002, Mayor Pugh, on behalf of the City of Beckley, filed a petition in circuit court seeking a writ of prohibition against the Commission and its commissioners. In his petition, the mayor alleged that no vacancy existed, that the Commission lacked jurisdiction over Sergeant Bowden's petition, and that the Commission had no authority to investigate whether a vacancy existed.

On May 17, 2002, the circuit court granted the writ of prohibition. In its order, the circuit court (1) prohibited the Commission from conducting "any proceedings to determine or declare whether a vacancy exists within the Police Department of the City of Beckley;" (2) voided "any purported subpoena or other investigatory mechanisms issued by the Respondent Commission for the purpose of conducting an investigation;" and (3) ordered that the "Respondent Commission shall conduct no further proceedings upon

the 'Petition for Promotion to Lieutenant[.]' " In a memorandum in support of its ruling, the circuit court also found that Mayor Pugh "in his capacity as mayor and chief executive officer of the city, determines whether a vacancy exists."

The Commission and Sergeant Bowden appealed the circuit court's ruling. We reverse, in part, and affirm, in part.

## II.

■ We review the circuit court's granting of a writ of prohibition under a *de novo* standard. "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*." Syllabus Point 1, *Martin v. West Virginia Division of Labor Contractor Licensing Board*, 199 W.Va. 613, 486 S.E.2d 782 (1997).

■ We have historically recognized that a writ of prohibition lies against an administrative tribunal where, in the performance of its quasi-judicial functions, it is attempting to exercise a power it does not possess. We also have recognized that lower tribunals have the authority to decide issues of fact that may or may not give rise to their jurisdiction.

> For a writ of prohibition to issue preventing a quasi-judicial administrative tribunal from taking up a particular matter on the asserted basis of lack of jurisdiction, the petitioner must demonstrate that there is a clear limitation on the tribunal's jurisdiction, and that there are no disputed issues of fact such that the jurisdictional question may be decided purely as a matter of law. In other words, the prohibition remedy is available only where an administrative tribunal patently and unquestionably lacks jurisdiction over the matter pending before it.

Syllabus, *Health Management, Inc. v. Lindell*, 207 W.Va. 68, 528 S.E.2d 762 (1999).

■ *W.Va.Code*, 8–14–6 through –24 [1969] contains the police officers' civil service statute. "An underlying purpose of the police civil service statute ... is to give security to members of paid police depart-

ments of municipalities having a population of five thousand or more against the vicissitudes of municipal elections," Syllabus Point 4, in part, *Dougherty v. City of Parkersburg,* 138 W.Va. 1, 76 S.E.2d 594 (1952), and "to provide for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers[.]" Syllabus Point 5, in part, *Dougherty.*

In *W.Va.Code,* 8–14–10(3) [1969], the Legislature vested police commissions with broad powers to investigate "concerning all matters touching the enforcement and effect of the civil service provisions of this article . . . and, in the course of such investigations, each commissioner shall have the power to administer oaths and affirmations, and to take testimony." *W.Va.Code,* 8–14–10(4) endows police commissions with "the power to subpoena and [to] require the attendance of witnesses, and the production thereby of books and papers pertinent to the investigations and inquiries herein authorized, and examine them and such public records as it shall require[.]"

■ Although the Legislature has vested police civil service commissions with broad investigatory powers, as a statutorily-created entity, there are limits to a police commission's authority. "A police civil service commission created by Article 5A of Chapter 8 of Code, 1931, as amended, has only such jurisdiction and powers as are conferred upon it by statute. It has no inherent jurisdiction or powers." Syllabus Point 3, *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 143 S.E.2d 535 (1965).

■ Nevertheless, police commissions serve as a counterbalance to the mayor's broad authority. The purpose of the police officers' civil service statute "would be frustrated if the appointing officer has unbridled discretion to make arbitrary employment decisions." *Major v. DeFrench,* 169 W.Va. 241, 257, 286 S.E.2d 688, 698 (1982). The police officers' civil service statute grants

the authority to call witnesses, issue subpoenas, examine records, and otherwise reasonably inquire into petitions touching on all matters concerning the police officers' civil service statute. To hold that the Commission has no authority to do more than ask the mayor's office whether a vacancy exists would run counter to the broad mandate granted to police civil service commissions by the Legislature.[1] Developing a factual record to determine whether a vacancy should be declared is clearly within the Commission's jurisdiction.

Therefore, we find that the circuit court erred in finding that the Policemen's Civil Service Commission did not have the jurisdiction to investigate whether a vacancy should be declared.

■ Having determined that the Commission has the authority to investigate whether a vacancy should be declared, we now turn to the issue of declaring and filling vacancies.

■ *W.Va.Code,* 8–14–15 [1969] states, in part, that: "[t]he appointing officer shall notify the policemen's civil service commission of any vacancy in a position which he desires to fill, and shall request the certification of eligibles." Under most municipalities' charters, the mayor, as the chief executive officer, is the appointing officer. As the appointing officer, the mayor declares vacancies and may abolish positions; however, a mayor could not refuse to declare a vacancy or abolish a position in contravention of public policy. For example, a mayor could not refuse to declare a vacancy simply because the next person in line for a promotion was female, a minority, or not a member of the mayor's political party. The decision to abolish an office "must be made in good faith, not motivated by any political or other improper objective." *State ex rel. Musick v. Londeree,* 145 W.Va. 369, 377, 115 S.E.2d 96, 100 (1960).

■ This Court has previously addressed a mayor's authority to declare vacancies in

1. Any factual record created by Beckley's Police Commission could be used in any action brought against the City of Beckley in circuit court and any findings of fact made by the Police Commission should be upheld by the circuit court unless clearly wrong. "A final order of a police civil

service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law." Syllabus Point 1, *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971).

*State ex rel. Musick v. Londeree,* 145 W.Va. 369,145 W.Va. 369, 115 S.E.2d 96 (1960). In *Musick,* a South Charleston police sergeant filed a writ of mandamus in circuit court arguing that the promotion of a lieutenant to a captain's position created a vacancy for a lieutenant's position in the City's police department. Much like the City of Beckley, when asked, the City of South Charleston stated that it did not have a vacancy to be filled. This Court in *Musick* held that unless a municipality's charter or ordinance requires a fixed number of lieutenants, the discretion to determine whether a vacancy exists rests with the municipality. "The City of South Charleston not being required by its charter or otherwise to have any particular number of lieutenants in its police department, the power to determine whether an alleged vacancy as to any office of such a lieutenant exists, or whether any such vacancy must be filled, rests in the discretion of the council of that city. Courts can not assume that such a vacancy exists, or that any such vacancy must be filled, merely on a showing that some person has ceased to exercise the functions of such an office." Syllabus Point 3, *Musick v. Londeree,* 145 W.Va. 369, 115 S.E.2d 96 (1960).

In the instant case in the Commission's response to the mayor's petition for a writ of prohibition, the Commission admitted that no charter or ordinance requires the City of Beckley to employ any set number of lieutenants within the City's police department. Absent a charter or an ordinance requiring a fixed number of lieutenants, the power to determine whether a vacancy exists and whether a vacancy needs to be filled rests within the sound discretion of the City of Beckley and the mayor as the City's appointing officer.

Applying Syllabus Point 3 of *State ex rel. Musick v. Londeree* to the matter at hand, we affirm the circuit court's finding that the authority to declare a vacancy ultimately rests with the Mayor of Beckley as the City of Beckley's appointing officer.[2]

2. Once a mayor declares a vacancy, however, the vacancy must be filled in accordance with the

## III.

For the foregoing reasons, we find that the circuit court erred in prohibiting the Policemen's Civil Service Commission from investigating whether or not it had jurisdiction over Sergeant Bowden's petition, and that the circuit court erred by voiding the Police Commission's subpoenas and otherwise curtailing their ability to investigate Sergeant Bowden's petition and to create a factual record.

However, we affirm the circuit court's finding that the Mayor of the City of Beckley, as the appointing officer for the municipality, declares whether a vacancy exists.

Reversed, in part; Affirmed, in part.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

Justice McGRAW concurs in part and dissents in part, and reserves the right to file a separate opinion.

DAVIS, Justice, concurring:

(Filed Dec. 4, 2003)

In this proceeding, the majority has concluded that the Mayor of Beckley has the exclusive right to determine whether a vacancy exists in the Beckley Police Department. The majority has also determined that the Policemen's Civil Service Commission (hereinafter referred to as "the Commission") has jurisdiction to investigate a complaint involving a *purported* vacancy in the Beckley Police Department. I fully concur with both findings by the majority and the disposition of this case. I have chosen to write separately to emphasize some matters that I find important to the resolution of the case.

In Syllabus point 3 of *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 143 S.E.2d 535 (1965), this Court held, in part, that "[a] police civil service commission ... has only such jurisdiction and powers as are conferred upon it by statute. It has no inherent jurisdiction or powers." *See* Syl. pt. 1, *Bays v. Police Civil Serv. Comm'n, City of Charleston,* 178 W.Va. 756, 364 S.E.2d 547 (1987). Under the statutes related to the

Policemen's Civil Service Commission's regulations found at *W.Va.Code,* 8–14–6 [1969].

jurisdiction and powers of the Commission, there is no express or implied authority to declare a vacancy in a police department. *See* W. Va.Code § 8–14–6 *et seq.* In fact W. Va.Code § 8–14–15 expressly holds that a municipality's "appointing officer shall notify the policemen's civil service commission of any vacancy in a position which he desires to fill[.]" The majority has correctly pointed out that, in most instances, the mayor of a municipality has exclusive authority to declare a vacancy in a police department.

Although the Commission does not have authority to declare a vacancy, it does have jurisdiction to hold an investigation to determine whether the failure to declare a vacancy was "made in good faith, not motivated by any political or other improper objective." *State ex rel. Musick v. Londeree,* 145 W.Va. 369, 377, 115 S.E.2d 96, 100 (1960). *See e.g.,* W. Va.Code § 8–14–18 ("No discrimination shall be exercised ... against, or in favor of, an applicant, eligible, or member of such a paid police department because of his political or religious opinions or affiliations."). It must be noted, however, that the Commission's investigative authority is not a license "to conduct fishing expeditions[.]" *West Virginia Advocates for the Developmentally Disabled v. Casey,* 178 W.Va. 682, 685, 364 S.E.2d 8, 11 (1987). Such an investigation must be narrow and confined to the relevant evidence addressing the single issue of whether the failure to declare a vacancy was made consistently with the requirements set forth in *Musick.*

In view of the foregoing, I respectfully concur.

McGRAW, Justice, concurring, in part, and dissenting, in part:

(Filed Dec. 5, 2003)

I concur with the majority's decision that the Policemen's Civil Service Commission has the authority to investigate whether or not a vacancy exists within the police department. I agree with the majority that Police Commissions have extensive investigatory powers, and that "Police Commissions serve as a counterbalance to the mayor's broad authority."

However, I dissent to the majority's conclusion that the city has unbridled discretion to determine whether or not a vacancy exists. As the majority noted in syllabus point 3, "An underlying purpose of the police civil service statute ... is to give security to members of paid police departments of municipalities having a population of five thousand or more against the vicissitudes of municipal elections." (citing syl. pt. 4, *in part, Dougherty v. City of Parkersburg,* 138 W.Va. 1, 76 S.E.2d 594 (1952)). Granting the city sole authority to determine vacancies creates a temptation for the city to eliminate positions when officials simply don't like the personality or politics of a particular candidate. Because I think that Police Civil Service Commissions should play a larger role in this process, I must respectfully dissent to this aspect of the majority opinion.