H. H. GARTIN *et al.*

*v.*

PAUL O. FIEDLER, *Mayor, etc., et al.*

(No. 9828)

Submitted April 23, 1946. Decided May 21, 1946.

*Okey P. Keadle,* for plaintiffs in error.

*Maxwell W. Flesher,* City Attorney, and *Scott & Ducker,* for defendants in error.

FOX, JUDGE:

This is a proceeding in mandamus, instituted in the Circuit Court of Cabell County, in which Herschel H. Gartin and seven others seek to compel the respondent, Paul O. Fiedler, Mayor of the City of Huntington, to recognize their alleged promotions to the grade of detective sergeant, on the police force of the City of Huntington, basing their claim to such recognition on their having been certified for such position by the Civil Service Commission of the City of Huntington, acting under powers vested in it by Chapter 57, Acts of the Legislature, 1937. During the pendency of the proceeding, Lon H. Whitten and eight others filed an intervening petition, supporting the position of the mayor that the peremptory writ of mandamus should not go against him. The circuit court, upon a hearing of the whole matter, denied the writ, and to that action we granted this writ of error.

The Council of the City of Huntington in a partial reorganization of its police department, adopted an ordinance on March 12, 1945, creating the position of detective sergeant, and provided for eight such positions to be

filled by promotion from the next lower grade in the department, which was the grade of patrolman. At the 1945 budget session of the council, the salaries of these eight positions were provided for. On June 8, 1945, the Mayor of the City of Huntington called for an examination by the civil service commission of the city to ascertain and report those eligible for such promotions. Preliminary to this examination, and on June 26, 1945, the civil service commission amended its rules by adopting rules 4, 5, and 6, which read as follows:

"4. No member of the Police Department will be eligible to take any examination for promotion within the Department if, at the time of such examination, said member shall have any charges of misconduct or other misfeasance pending against him.

"5. After the completion of any examination for promotion within the Department, the Commission shall give to the Mayor the name or names of those members receiving the highest grade in the said examination and who, in the opinion of the Commission, are best qualified to fill said position or positions, in the ratio of one name for each position to be filled.

"6. The following factors shall be taken into consideration in the determination of the final grade of an applicant for promotion within the department: A. Written Examination B. Personal Appearance and Physical Condition C. Character Report D. Record of Service and Experience E. Ability to Gather and Present Evidence F. Reputation for Public Courtesy."

These rules were directed to be posted in public places.

A written examination was set for August 19, 1945, all persons eligible to compete for promotions were notified, and thirty-five patrolmen filed applications for examination and were examined. Thereafter, the applicants were examined orally, and interviewed personally by the commission, and, it is alleged, the factors provided by rule 6 above quoted were considered by the commission. Following the examinations the commission

certified that the petitioners herein made the highest grades and were entitled to promotion. Only eight persons were certified as entitled to promotion to the eight positions above mentioned. So far as the record discloses, there was no passing grade adopted by the civil service commission, either for the written examination, or on the factors provided for in rule 6, but the grade of each applicant examined was reported and stated on the minutes of the civil service commission. From these minutes it appears that the grades of the several petitioners, as reported to the mayor by the civil service commission, are as follows: Herschel H. Gartin, 94; Herman A. Frazier, 94; J. Wilbur Honaker, 94; Cecil Kessick, 94; Howard T. Newman, 89; James Steinbrecher, 91; Lee Swing, 91; John D. Rule, 88. The grades of the intervening petitioners, as so reported, are: Lon H. Whitten, 50; Roy B. Hagley, 70; E. R. Blake, 74; Julius May, 75; Dennis E. Morris, 83; James Finley, 54; Charles W. Staley, 59; Otto Malcolm, 61; J. B. Walker, 53. While some of the applicants received lower grades than any one of the intervening petitioners, yet on the other hand some of those who undertook the examination, and who did not receive the highest grades, received higher grades than the intervening petitioners. The mayor refused to recognize the report and recommendation of the civil service commission, and demanded of the commission that it certify to him all persons who passed the examination, to the end that he might choose therefrom the eight detective sergeants. The commission refused to make any further certification, and the petitioners instituted this mandamus proceeding in the Circuit Court of Cabell County, in which they pray that the respondent, the Mayor of Huntington, be required to "recognize the promotion of your petitioners to the rank or grade of Detective Sergeant in the Police Department of the City of Huntington, to assign them to the duties prescribed for that rank or grade, and to pay to them from the date of their certification as aforesaid the increase in salaries over that now received by them as

Patrolmen provided by said ordinance, and for such other further and general relief as to Your Honor may seem fit and proper."

The sole question presented is whether the power of promotion in the police department of the City of Huntington rests with the civil service commission, or whether such power is vested in the mayor of the city, to be exercised through selections by him from a list of persons certified to him by said commission.

The question stated above must be determined from a study of the provisions of Chapter 57, Acts of the Legislature, 1937, governing appointments and promotions in paid police departments throughout the State. The statute is applicable to police departments of every city in the State having a population of more than five thousand, which, of course, includes the City of Huntington; and the act provides that: "On and after the date this act takes effect no person except the chief of police shall be appointed, reinstated, promoted or discharged as a paid member of said department of any city or municipality in the state of West Virginia subject to the provisions hereof, in any manner or by any means other than those prescribed in this act"; and, further, "All appointments to and promotions in all paid police departments of cities and municipalities of five thousand population or more, shall be made only according to qualifications and fitness to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided."

Section 2 provides for the creation of a three-man civil service commission in each of such cities or municipalities, one to be appointed by the governor, one by the local chamber of commerce, and one by the local chapter of the Fraternal Order of Police.

Section 6 provides that: "The civil service commission in each city or municipality, shall make rules and regulations providing for examinations for positions in

the paid police department in each city or municipality under this act, and for appointments to and promotions therein, and for such other matters as are necessary to carry out the purposes of this act. Due notice of the contents of such rules and regulations and of any modifications thereof shall be given, by mail, in due season, to appointing officers affected thereby; and said rules and regulations and modifications thereof shall also be printed for public distribution. * * *"

Section 7 provides that: "All examinations for positions or promotions shall be practical in their character, and shall relate to such matters, and include such inquiries as will fairly and fully test the comparative merit and fitness of the person or persons examined to discharge the duties of the employment sought by him or them. All examinations shall be open to all applicants who have fulfilled the preliminary requirements, stated in other sections of this act. All applicants for any position in police department shall, as hereinafter stated, subject to regulations adopted by the civil service commission, be required to submit to a physical examination before being admitted to the regular examination held by the commission."

Section 8 provides that applications of persons applying for admission to any examination shall be filed and shall give certain required information, and further provides: "If any applicant feels himself aggrieved by the action of the commission in refusing to examine him, or after an examination, to certify him as an eligible, as provided in this section, the commission shall, at the request of said applicant, appoint a time and place for a public hearing, at which time such applicant may appear, by himself or counsel, or both, and the commission shall then review its refusal to make such examination or certification, and testimony shall be taken." It is provided therein that after this review the decision of the commission shall be final.

Section 9 of the act provides that: "Every position or employment, unless filled by promotion, reinstatement, or reduction, shall be filled only in the following manner: The appointing officer shall notify the civil service commission of any vacancy in the service which he desires to fill, and shall request the certification of eligibles. The commission shall forthwith certify, from the eligible list, the names of three persons thereon who received the highest averages at preceding examinations held under the provisions of this act within a period of three years next preceding the date of the appointment. The appointing officer shall, thereupon, with sole reference to the relative merit and fitness of the candidates, make an appointment from the three names so certified."

Section 11, covering the filling of vacancies by promotion, provides: "Vacancies in positions in the police departments shall be filled, so far as practicable, by promotions from among persons holding positions in the next lower grade in the department. Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission, and upon the superior qualifications of the persons promoted, as shown by his previous service and experience: *Provided, however,* That except for the chief of police no person shall be eligible for promotion from the lower grade to the next higher grade until such person shall have completed at least two years' service in the next lower grade in the department. The commission shall have the power to determine in each instance whether an increase in salary constitutes a promotion."

It will be noted that Section 9 of the act provides that all positions "unless filled by promotion, reinstatement or reduction" shall be filled in a certain manner. This section then provides that the appointing officer shall notify the civil service commission of any vacancy in the service which he desires to fill, and shall request the certification of eligibles.

The Charter of the City of Huntington, Chapter 161, Acts of the Legislature, Second Extraordinary Session, 1933, provides by Section 12 thereof that: "The mayor shall be chief executive officer of the city and shall have and exercise all of the rights, powers and duties of mayor conferred by the constitution and laws of this state, and those conferred by the terms of this act; and it shall be the duty of the mayor to see that the laws and ordinances of the city and the resolutions and orders of the council are enforced, and that the peace and good order of the city are preserved, and that the persons and property therein are protected. The mayor shall have such other authority and powers that are otherwise enumerated and given in this act." Section 13 provides: "The mayor shall have the right, power and authority to name and appoint all persons to fill the offices and places of employment provided by the city. All persons holding offices under the provisions of this section may be removed from office at the pleasure of the mayor"; but it seems that this power so expressly granted would not apply to persons other than a city clerk, treasurer, police judge, city attorney, chief of police, chief of fire department, city engineer and such other officers as were or might thereafter be established by ordinance. And so it is that a serious doubt arises as to whether the mayor was expressly authorized to appoint members of the police department. However, that power must exist somewhere; and we are inclined to the opinion that it does exist in the mayor. We are fortified in this view by the provision of the Civil Service Act, Chapter 57, Acts of the Legislature, 1937, wherein, by Section 9 thereof, the appointing officer shall have the right to fill any vacancy in the service by appointment of one person from an eligible list of three, furnished by the civil service commission.

The argument of the respondent mayor, supported by that of the intervening petitioners, is that the appointing power, as well as the power of promotion, in the police

department, is vested in him; and that the function of the civil service commission is only to certify an eligible list, from which he may make appointments as he chooses. The position of the petitioners is that the power of appointment vested in the mayor, if it exists, is confined entirely to the filling of new positions in the police department; and that the power of promotion, after a person is once a member of the police department, rests with the civil service commission.

By way of background only, it should be stated that under the Charter of the City of Huntington, Section 52 of Chapter 161, Acts of the Legislature, Second Extraordinary Session, 1933, the civil service board, therein provided for, was empowered to make appointments to the police and fire departments of the city, and to make promotions of members of either department. It is therefore clear that, under the charter of the city, the mayor is without power either to appoint or promote members of the police department, and this fact is adverted to in the brief of counsel for the petitioners. However, Section 20 of Chapter 57 of the Acts of the Legislature, 1937, expressly provides that: "All acts and parts of acts of the legislature of the state of West Virginia, general, special, local or municipal charters, or parts thereof, in relation to any civil service measure affecting the paid police departments of any city or municipality inconsistent with this act shall be, and the same are hereby repealed insofar as such inconsistencies shall exist." And it is further provided in said section: "It is understood and intended by this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, policemen or other employees of said police departments in all cities and municipalities of five thousand population or more, wherein the members of the police department are paid". We are of the opinion, therefore, that on the questions presented here we must look to the Act of 1937, and disregard any and all provisions in relation

to civil service, contained in the Charter of the City of Huntington.

On the question of the appointing power claimed for the mayor, the last clause of Section 9 of the 1937 Acts provides: "The term 'appointing officer' as used in this act shall be construed to mean the city or municipal officer in whom the power of appointment of members to a paid police department is vested by the charter of a city or municipality in which an appointment shall be made". Earlier in the same section it is provided, with reference to the appointment of members of the police department, that: "The appointing officer shall, thereupon, with sole reference to the relative merit and fitness of the candidates, make an appointment from the three names so certified:". It is apparent that the Act of 1937 contemplated that the appointing power should rest somewhere. As we have noted above, the Charter of the City of Huntington did not authorize the appointment of police officers by the mayor of the city, and so the quotation above with respect to the appointing officer does not cover the particular case before us. However, the Mayor of the City of Huntington is the chief executive of that city, with general power to do such acts as are necessary to carry on city government, limited, of course, to provisions of the charter under which he acts. As stated above, the power of appointment must exist in some person, and we think we are justified in holding that Chapter 57, Acts of the Legislature, 1937, contemplates the appointment of policemen by the mayor of the city.

Many decisions from other jurisdictions are cited, bearing upon the power of civil service commissions. Generally, a liberal rule is applied in favor of civil service boards. These decisions are of little value to us in arriving at our conclusions. We must rely wholly on our own statute. This being true, one of the first things to be considered is the power of the civil service commission to make rules, and particularly its power to promulgate rules numbers 4, 5 and 6 quoted at the beginning of this

opinion. For authority to make these rules, see Section 6 of the Civil Service Act herein quoted.

The civil service commission, under the provisions of Section 6, aforesaid, adopted the three rules above mentioned. Apparently, no question is raised as to the validity of rules 4 and 6, or, at least, those rules are not here in issue. But it is said that rule 5 is invalid. It is contended that the civil service commission was without power to make such rule, and that in making the same effective it exceeded its authority, and its act in so doing was void. In this connection it should be noted that the statute does not provide for a passing grade, but does provide, in more than one of its sections, that appointments and promotions shall be based upon merit. In Section 9 of the act, referring to appointments to the police force, it is provided that the names of the three persons certified shall have received the highest averages; but there is no corresponding provision in Section 11 relating to promotions. If, in the matter of appointment, the persons certified shall be those receiving the highest averages, then there would be no necessity for a passing grade, for the reason that whatever the grade a person might receive, under the three highest grades, would avail him nothing, and be wholly immaterial. Rule 5 does nothing more than read into the statute concerning promotions the provision made mandatory by the statute relating to appointments. For this reason, and many others that could be mentioned, including the paramount reason that the rule carries out the civil service principle, we do not think the civil service commission exceeded its powers when it adopted this rule, and certified the results of its examination thereunder.

As we have indicated above, prior to the general Civil Service Act of 1937, the Mayor of the City of Huntington was without power either to appoint or promote members of the police department of that city. The Act of 1937 conferred upon him the power of appointment to vacancies in the department. Section 9 of the act pro-

vides: "Every position or employment, unless filled by promotion, reinstatement, or reduction, shall be filled only in the following manner:" and then proceeds to require the appointing officer to notify the civil service commission of any vacancy, and request the certification of eligibles; and, further, that upon certification of three names by the commission, the appointing officer shall, with sole reference to the relative merit and fitness of the candidates, make an appointment from the three names so certified. This, we think, is the limit of the appointing power of the mayor. We can find no express provision, or any provision which, through necessary implication, supports any other conclusion.

We are supported in this view by an analysis of Section 11 of the same act, dealing with the filling of vacancies by promotion. That section provides: "Vacancies in positions in the police department shall be filled, so far as practicable, by promotion from among persons holding positions in the next lower grade in the department". That provision has been complied with in this proceeding. Then follows this significant and, we think, controlling provision: "Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission and upon the superior qualifications of the persons promoted, as shown by his previous service and experience." There is, in this section, no mention of any appointing officer; nor is the test therein provided for required to be certified to the Mayor of the City of Huntington for any further action on his part. Of course, it is contemplated that any action of the civil service commission shall be reported to the mayor, as the chief executive of the city, to be by him carried into force and effect. But we see nothing in Section 11 that even intimates that, to secure promotion, any further action is required than to pass the test prescribed by the civil service commission, and have the eligibility of an applicant certified. The section provides that promotions shall be based upon merit, which we construe to mean that the most meritorious person is entitled thereto.

The mayor's function in selecting members of the police department has been recognized, when he is given the right to appoint policemen in the first instance. He is permitted to make selection of one man from every three certified. Once a person has passed that test, he is presumed to be entitled to serve on the force, with certain rights of promotion, until removed for cause. In our opinion, the civil service law contemplates that if a member of the force develops superior qualities from his service, and those qualities are determined in a fair test with other members of the department, he becomes entitled to promotion as a matter of law; and the mayor has no power to exercise any discretionary selective power in the matter. To hold otherwise would, we think, violate the spirit and purpose of the civil service statutes. Counsel for the respondent and the intervening petitioners jointly state: "Our contention is, that the section relating to original appointments is one of limitation upon the Mayor, limiting him to the appointment of one of three certified eligibles, while the section relating to promotions does not so limit the Mayor and he has unlimited choice from all those on the whole eligibility list, that is, from all those who passed the tests or examinations given by the Civil Service Commission." Of course, we assume that that contention is based upon the theory that a passing grade should have been adopted. But even so, that construction of the statute would give the mayor the power to ignore and override the provision with respect to highest average, contained in Section 9 of the Civil Service Act, and the provision with respect to merit contained in Section 11 of that act. The report of the examination under consideration shows that the petitioners were the eight persons who received the highest grades in that examination. Those grades ranged from eighty-eight to ninety-four. The highest grade of any one of the intervening petitioners was eighty-three, and ranged from that figure down to fifty. This being the situation, we can see no prejudice to the police department of the City of Huntington in what the civil service commission did.

It is suggested that the mayor of the city, even if he had the power of appointment, would be required to observe the provisions of the Civil Service Act in relation to highest averages and merit, and that he could not legally appoint anyone other than those receiving the highest grades. If that position be correct, then this litigation is useless; and in any event the mayor would be required to recognize the promotion of the petitioners. Whether this position be the correct one, we do not know, and it is not necessary to decide. We choose to base our decision upon our conclusion that, once a civil service examination is had, and the person receiving the highest grade is certified to the mayor for promotion, that promotion becomes effective through operation of law, without any further action on the part of the mayor, other than to designate work he shall perform, and provide for the payment of his salary. The writ of mandamus prayed for should have been awarded by the court below.

The order of the Circuit Court of Cabell County is reversed, and this proceeding remanded to said court, with directions to enter an order awarding a peremptory writ of mandamus in favor of the petitioners, as prayed for in their petition.

*Reversed and remanded with directions.*