346 S.E.2d 808

**CITY OF PARKERSBURG, etc., and Pat S. Pappas, as Mayor, etc.**

v.

**Thomas J. SKINNER.**

No. 16763.

Supreme Court of Appeals of West Virginia.

July 10, 1986.

J. Skinner, to his position with the Parkersburg Police Department.

## I

Lt. Thomas J. Skinner was discharged from the Parkersburg Police Department on October 18, 1984. He had been a police officer since 1971. A dismissal letter signed by the Mayor of Parkersburg charged Skinner with violations of various rules and regulations of the Parkersburg Police Department. The violations stemmed from three separate incidents, two involving Skinner's ex-wife and the last involving his ex-wife's boyfriend, Michael Stephenson.

A hearing was held, at Skinner's request, before the Police Civil Service Commission, pursuant to *W.Va.Code*, 8-14-20(a) [1980], following which the commission ordered that Skinner be reinstated. The City of Parkersburg filed a petition for a writ of certiorari in the Circuit Court of Wood County. The circuit court affirmed the commission's decision and this appeal followed.

Although the appellant assigns numerous errors, we need only decide whether the circuit court was correct in upholding the commission's determination that there was no just cause for dismissal. *W.Va. Code*, 8-14-20 .[1980].[1]

## II

At the hearing before the commission, Skinner and his ex-wife's boyfriend (Michael Stephenson) related conflicting versions of an incident that occurred on October 2, 1984. Stephenson, a sixth grade teacher in Wood County, testified that after exiting the school parking lot, on his way home from work, he noticed that Skinner, driving a car with a blue light on the dashboard, was following him. Stephenson was heading north toward Parkersburg, but before reaching the city limits, Skinner

C. Blaine Myers, Parkersburg, for appellants.

Theodore R. Dues, Jr., Charleston, for appellee.

PER CURIAM:

This is an appeal by the City of Parkersburg from an order of the Circuit Court of Wood County affirming a decision of· the Parkersburg Police Civil Service Commission, which reinstated the appellee, Thomas

1. *W.Va.Code*, 8-14-20(a) [1980], provides, in pertinent part:
   (a) No member of any paid police department subject to the civil service provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause, which shall not be religious or political, *except as hereinbefore provided in section nineteen of this article;* ...

activated the blue light signalling Stephenson to stop. Skinner asked Stephenson for his license and registration and also told Stephenson to get out of his truck. After examining the documents, Skinner advised Stephenson that he knew Stephenson lived in Ohio and not at the West Virginia address recorded on the license. Stephenson replied that he was living temporarily in Ohio.

According to Stephenson's testimony, Skinner then said, "You had better stay away from Sharon [Skinner's ex-wife] or your entire world will come down around you." Skinner then did some damage to Stephenson's vehicle. When Stephenson told Skinner to leave his truck alone, Skinner became enraged, used profane expressions, and threatened to break Stephenson's legs. Skinner shoved Stephenson against the police car, frisked him, and ordered him to get into the car. An argument ensued, during which Skinner accused Stephenson of having "done things" to Skinner's daughter. Eventually, Stephenson got back in his truck and drove home.

A passenger in Stephenson's truck corroborated Stephenson's testimony, except he was unable to overhear the conversation between Skinner and Stephenson while the two were in the police car.

Skinner testified that his encounter with Stephenson was a coincidence. He was in the vicinity of the school to visit a fellow officer who had just been released from the hospital and to inspect a piece of property he owned. He explained that he stopped Stephenson because he observed the West Virginia license plate on Stephenson's vehicle and knew that Stephenson lived in the State of Ohio.

Skinner said he followed Stephenson for about three or four miles and turned on his blue light about one-half mile outside the city limits of Parkersburg. He expected Stephenson to drive farther before stopping so that the two vehicles would stop near the city limits. Skinner did not want to be caught in a heavy flow of traffic crossing a bridge that led into the city. Contrary to Skinner's expectation, Stephenson pulled over immediately.

Skinner said that he asked Stephenson to get out of his vehicle to spare him the embarrassment of having his passenger hear about his possible violations of the law. According to Skinner, Stephenson initiated the conversation about Skinner's ex-wife, accusing Skinner of making the stop in order to harass him. The two began to argue, and Skinner placed Stephenson in the police car to avoid escalation of the situation. Stephenson was patted down to check for a weapon. During the conversation in the police car, Skinner told Stephenson that he did not care whether Stephenson had a relationship with his ex-wife so long as it did not involve the Skinners' children.

Skinner did not arrest Stephenson or issue a citation. After the two men conversed in the police car for five to ten minutes, during which they shouted at each other, Stephenson left.

The other two incidents involved allegations that Skinner physically abused Sharon Skinner, his ex-wife, and damaged a car belonging to Sharon. Conflicting testimony was heard pertaining to these two incidents. Sharon charged that her former husband struck her and knocked her to the ground. Skinner testified that Sharon kicked him and was attempting to kick him again when he grabbed her leg, in self-defense, causing her to fall.

Sharon also testified that Skinner tried to break into her car and that when she tried to stop him he used a set of keys to scratch the paint all the way around the car and to tear the vinyl top. Skinner testified that he was using his own keys to unlock the door of the car, which was titled in both his and his ex-wife's names. He wanted to recover some of his belongings. Sharon tried to stop him by taking hold of his arm. This caused him to scratch the car door with the keys.

III

The proper scope of judicial review is set forth in syllabus point 2 of *Appeal of*

*Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971):

The judgment of a circuit court affirming a final order of a police civil service commission, upon appeal therefrom as provided by statute, will not be reversed by this Court unless the final order of the commission was against the clear preponderance of the evidence or was based upon a mistake of law.

*See also* syl. pt. 1, *Martin v. Pugh,* 175 W.Va. 495, 334 S.E.2d 633 (1985).

■ We are not bound by the circuit court's conclusions of law. "In reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law." Syl. pt. 1, *Burks v. McNeel,* 164 W.Va. 654, 264 S.E.2d 651 (1980).

### IV

In *City of Logan v. Dingess,* 161 W.Va. 377, 242 S.E.2d 473 (1978), we set out the standard for evaluating "cause" for dismissal of a police officer.

In order to support a dismissal of an employee covered by civil service, the evidence must show good cause for such dismissal and such cause must be substantial. "The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interest of the public. An officer should not be removed from office on trivial or inconsequential matters, or for mere technical violations of statute or official duty without wrongful intention." 67 C.J.S. *Officers,* section 60b; *Thurmond v. Steele,* [159] W.Va. [630], 225 S.E.2d 210 (1976); *Guine v. Civil Service Com-*

*mission,* 149 W.Va. 461, 141 S.E.2d 364 (1965).

161 W.Va. at 381, 242 S.E.2d at 475. *See also* syl. pt. 1, *Oakes v. Dept. of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980).

In its order, the circuit court did not define "just cause." However, the court stated: "In conclusion there was little or no evidence that any conduct of officer Skinner was such as to impair the substantial relations between such conduct, as was established by a preponderance of the evidence, and the efficient operation of the public service of such Police Department."[2]

With respect to the October 2, 1984 incident, the commission found that Skinner had visited a fellow officer outside the city limits on official business,[3] that he stopped Michael Stephenson outside the city limits of Parkersburg, that he had probable cause to stop Stephenson, who was in violation of a statute regarding proper vehicle registration, and that a conversation took place relating to that violation.

With respect to the other two incidents, the commission found that Skinner did not deliberately or intentionally hit his ex-wife or knock her to the ground, and that he did not deliberately or intentionally damage a certain automobile. The commission concluded that although Skinner may have demonstrated "questionable judgment" in stopping Stephenson, he had not violated any of the rules and regulations of the Parkersburg Police Department, as had been charged.

The findings of fact and conclusions of law in the circuit court's order, with respect to the October 2, 1984 incident, differ significantly from those of the commission. The court found that Skinner "may have been on official business when he used a police car outside the city limits" and that the conversation between Stephenson and

---

**2.** The circuit court relied on the following discussion of "just cause" found at 15A Am.Jur.2d, Civil Service § 63:

Under a statute requiring 'just cause' for the removal, discharge, or demotion of an officer or an employee in the classified civil service, the quoted words mean cause sufficient in law, or any cause which is detrimental to the

public service. Legal cause for disciplinary action exists if the facts found by the commission disclose that the employee's conduct impairs the efficiency of the public service.

**3.** Police Department rules permitted use of police vehicles outside the city limits when the officer was on official business.

Skinner involved Stephenson's association with Skinner's ex-wife. In reaching the conclusion that the removing officer failed to carry his burden of showing just cause for dismissing Officer Skinner, the circuit court determined, contrary to the commission, that during the stop of Stephenson, Skinner committed violations of the Police Code. However, the court considered such violations to be merely technical.

The court specifically concluded that Skinner engaged in conduct unbecoming a police officer, exhibited questionable judgment, and technically violated provisions of the rules and regulations of the Police Department of the City of Parkersburg, which, *inter alia,* established standards of ethical conduct, prohibited arrests that were not in accordance with law or departmental regulations,[4] and proscribed "unbecoming" conduct.[5]

It is difficult to reconcile the circuit court's conclusion of law that Skinner committed only technical violations of police department regulations with the findings that during the stop of Stephenson, Skinner engaged in conversation about Stephenson's relationship with Skinner's ex-wife, and that Skinner exhibited questionable judgment in stopping Stephenson.[6]

The violations of the police department code all stemmed from the encounter between Skinner and Stephenson. Skinner's interaction with Stephenson, though not found to involve violent or threatening behavior, nevertheless directly affected the rights of a member of the public. Such conduct constitutes more than mere technical violation of the police department rules. Where, as under the circumstances of this case, a police officer shows questionable judgment in making an investigatory stop of a citizen involving a possible violation of vehicle registration laws and engages in heated conversation with that citizen of a personal nature on a subject that is a source of friction and antagonism between the two, we believe that the police officer has engaged in conduct violative of his official duty. We therefore conclude that the burden to show just cause for dismissal was properly carried. The circuit court made a mistake of law in concluding other-

---

**4.** Section 20.06.7 provides: "Officers shall not make any arrest, search or seizure which they know or should know is not in accordance with law and Departmental procedures."

**5.** Section 20.10.1 provides:
Officers conduct themselves at all times, both on and off duty, in such manner as to reflect most favorably on the Department. Conduct unbecoming an officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department, or that which impairs the operation or efficiency of the Department or officer.

**6.** Neither the commission nor the circuit court made a determination with respect to the legality of stopping Stephenson outside the city limits of Parkersburg. Without deciding this question, we take notice of *W. Va. Code,* 8–14–3 [1976], which provides, in pertinent part:
The chief and any member of the police force or department of a municipality and any municipal sergeant shall have all of the powers, authority, rights and privileges *within the corporate limits of the municipality* with regard to the arrest of persons, the collection of claims, and the execution and return of any search warrant, warrant of arrest or other process, which can legally be exercised or discharged by a deputy sheriff of a county.

*In order to arrest for the violation of municipal ordinances and as to all matters arising within the corporate limits* and coming within the scope of his official duties, the powers of any chief, policeman or sergeant shall extend anywhere within the county or counties in which the municipality is located, and any such chief, policeman or sergeant shall have the same authority of pursuit and arrest beyond his normal jurisdiction as has a sheriff.
....
It shall be the duty of the mayor and police officers of every municipality and any municipal sergeant to aid in the enforcement of the criminal laws of the State *within the municipality,* independently of any charter provision or any ordinance or lack of an ordinance with respect thereto, and to cause the arrest of or arrest any offender and take him before a regular or ex officio justice of the peace of the county or a magistrate to be dealt with according to the law. Failure on the part of any such official or officer to discharge any duty imposed by the provisions of this section shall be deemed official misconduct for which he may be removed from office. Any such official or officer shall have the same authority to execute a warrant issued by a justice of the peace or a magistrate, and the same authority to arrest without a warrant for offenses committed in his presence, as a deputy sheriff. (emphasis added).

wise. For the reasons set forth in this opinion, the order of the Circuit Court of Wood County affirming the ruling of the Parkersburg Police Civil Service Commission is reversed.

Reversed.