364 S.E.2d 547

**Donald G. BAYS and Monon E. Taylor**

**v.**

**The POLICE CIVIL SERVICE COMMISSION, CITY OF CHARLESTON, West Virginia.**

**No. 17569.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1987.

Dissenting Opinion Jan. 25, 1988.

---

Stanley M. Hostler, Robin Jean Davis, Charleston, for appellants.

F.I. Graff, Jr., Charleston, for appellees.

McHUGH, Justice:

This case is before this Court upon appeal from a final order of the Circuit Court of Kanawha County, West Virginia, affirming a final order of the appellee, the Police Civil Service Commission for the City of Charleston, West Virginia ("the PCSC"). The PCSC and the circuit court ruled that the appellants, Donald G. Bays and Monon E. Taylor, applicants for promotion from the rank of "patrolman" to the rank of corporal with the Police Department of the City of Charleston, West Virginia, were precluded from further consideration for such promotion as a result of receiving scores on the written examination within the bottom ten percent of those applicants taking the examination. Based upon our

review of the petition, the briefs and argument of counsel and the record, we reverse.

I

The material facts in this case are uncontroverted.[1] In November, 1985, the Mayor of the City of Charleston notified the PCSC that vacancies existed in the police department in the rank of corporal and requested that the PCSC establish an eligibility list to fill such vacancies. On November 15, 1985, the PCSC posted and published notice that these vacancies existed and that the same would be filled by promotion from a list of eligibles established by, *inter alia*, the applicants' achieving a passing score on a competitive written examination to be held on December 11, 1985, at a designated time and place. The notice stated that the PCSC would, "in its discretion, set the level of achievement necessary to qualify for promotion."

On December 9, 1985, two days before the competitive written examination, the PCSC, at the request of some of the applicants for promotion to the rank of corporal, set and orally gave notice of the passing ratio. Specifically, the PCSC determined that it would apply a 90/10 percent pass rate. That is, the top ninety percent of those taking the examination would receive passing scores and the bottom ten percent would fail.

The PCSC graded the examination and directed that all those who received a score in the bottom ten percent "cease from further participation in the promotional examination process." Seventy-three police patrolmen took the written examination for promotion to the rank of corporal. The written examination contained 145 questions. Those applicants finishing in the top ninety percent of the applicants achieved a

1. The appellants do not assign as error any of the PCSC's findings of fact. In their petition and initial brief the appellants do mention their proposed finding of fact number 14, not adopted by the PCSC, which stated, *inter alia,* that the appellants learned after the written examination in question was conducted that the PCSC had originally established a passing score of 62 correct answers, as opposed to the passing score of 75 correct answers actually utilized. In their reply brief, however, the appellants agree

with the PCSC that only questions of law are involved. Rather than relying upon the alleged arbitrary increase in the passing score, the appellants in their reply brief rely upon their assertion that the PCSC, if it had authority to set a passing ratio or score on the written examination, was without authority to set the 90/10 percent-of-applicants passing ratio (and the attendant passing score of 75 correct answers) two days before the written examination was conducted.

score on the written examination of 75 correct answers or more. Those applicants achieving a score of less than 75 correct answers fell in the bottom ten percent. The appellants' scores, 71 by Mr. Bays and 73 by Mr. Taylor, fell in the bottom ten percent, and the appellants were accordingly not considered further for promotion to the rank of corporal.

Those applicants finishing the written examination in the top ninety percent of the applicants and, thus, passing the written examination, were required thereafter to pass a medical examination and were evaluated further, based upon their performance appraisal and length of service with the police department.

If appellant Bays had been given credit for his thirteen years of service and his performance appraisal had been considered, his cumulative score would have resulted in his being certified as the fifteenth person from the top of the eligibility list and his promotion, in December, 1985, to the rank of corporal. Appellant Bays would have received an increase in his annual salary in the amount of $882 had he been promoted to the rank of corporal. Similarly, if appellant Taylor had been given credit for his sixteen years of service and his performance appraisal had been considered, his cumulative score would have resulted in his being certified as number six on the eligibility list and his promotion, in December, 1985, to the rank of corporal. Appellant Taylor would have received an increase in his annual salary of approximately $900 had he been promoted to the rank of corporal. Both of the appellants met all of the other qualifications necessary to be promoted to the rank of corporal.

In December, 1985, the Mayor promoted the top thirty-two persons on the eligibility list to the rank of corporal.

■ After being refused further consideration for promotion, due to their scores on the written examination, the appellants timely requested the PCSC to review its decision not to certify the appellants as eligible for the promotion in question.[2] The appellants' primary contention before the PCSC was that the Police Civil Service Act, specifically, W. Va. Code, 8–14–17 [1969, 1986], requires promotions to be based not only upon a consideration of the results of a written examination but also upon the applicants' previous service and experience.[3] The appellants also contended that the PCSC's determination of the 90/10 percent-of-applicants passing ratio on the written examination was unlawful, as such determination was made only two days before the written examination, in alleged conflict with W. Va. Code, 8–14–13 [1969], which requires notice of certain matters to be given at least one week prior to the written examination, and in alleged conflict with W. Va. Code, 8–14–11 [1981], which requires written notice to the appointing officer of any modifications to rules and regulations of the PCSC, "in due season[.]" The PCSC's final order, in March, 1986, was adverse to the appellants. They next brought the matter before the Circuit Court of Kanawha County, West Virginia.[4] The circuit court, in October, 1986, af-

**2.** The appellants' request for review by the PCSC was actually pursuant to W. Va. Code, 8–14–14 [1969], not pursuant to W. Va. Code, 8–14–13a [1984] as stated in the appellants' petition. The issue involved a refusal to certify applicants as eligible for a position, not the validity of the scores received on the written examination, the subject matter of W. Va. Code, 8–14–13a [1984].

**3.** W. Va. Code, 8–14–17 [1969, 1986] provides in pertinent part:

Vacancies in positions in a paid police department of a Class I or Class II city shall be filled, so far as practicable, by promotions from among individuals holding positions in the next lower grade in the department. Pro-

motions shall be *based upon merit and fitness* to be ascertained by *competitive examinations* to be provided by the policemen's civil service commission *and upon the superior qualifications* of the individuals promoted, *as shown by their previous service and experience*[.] (emphases added) The 1986 amendment to this section, which is not applicable to this case, did not affect this part of this section.

**4.** The matter should have been brought as a mandamus proceeding under W. Va. Code, 8–14–14 [1969], not as an appeal under W. Va. Code, 8–14–13a [1984], because the issue involved a refusal to certify applicants as eligible for a position, not the validity of the scores received on the written examination. *See supra* note 2.

firmed the PCSC's decision. The circuit court ruled that the PCSC had the authority to preclude from further consideration all applicants for promotion who fail to achieve a passing score on the written examination. The circuit court also ruled that the Police Civil Service Act and the PCSC's regulations do not require (or prohibit) the PCSC from establishing a passing score at any particular time in advance of administering the written examination.

## II

The appellants raise before this Court the same issues raised before the PCSC and the circuit court. That is, their principal assignment of error is that the PCSC's own regulations, as well as the Police Civil Service Act, require the PCSC to consider the service and experience of each applicant for promotion, in addition to considering the grade of each applicant on the written examination. Stated another way, the appellants argue that the PCSC lacks the authority to establish a passing score for written examinations for promotions, so that an applicant who fails the written examination is precluded from further consideration for promotion. Due to our agreement with the appellants that the PCSC lacks the statutory authority to establish such a passing score, it is not necessary to address the other assignments of error relating to the procedures utilized in this case to establish and give notice of the passing ratio or score for the written examination administered as part of the process for promotions in this case.

The PCSC's regulations require an applicant for promotion to pass the written examination as a condition precedent to further evaluation for promotion. For example, PCSC Reg. § 10.02(a) provides in pertinent part: "Each applicant shall be required to achieve a passing score on such written examination." Another example is PCSC Reg. § 10.02(b), which provides in pertinent part: "The Commission shall direct that individuals failing the written examination cease to participate further in any evaluation processes." A third example is PCSC Reg. § 6.09(c): "Upon completion of the testing and evaluation procedures, candidates for promotion who have been qualified for promotion by achieving a passing result on each testing and evaluation procedure shall be ranked in order of merit, using the following formula: ..."[5] Thus, under these regulations, only those applicants who pass the written examination will have their performance appraisals and seniority credits weighted together with the written examination scores under PCSC Reg. § 10.07(b).[6]

---

5. The appellants' assertion that PCSC Reg. § 10.02(a)–(b), quoted in pertinent part immediately *supra* in the body of this opinion, are applicable only to examinations for initial appointments, and not also to examinations for promotions, is without merit. PCSC Reg. § 6.09, entitled "Testing and Evaluation Required for Promotion," provides, in subsection (b), that "[e]ach test or evaluation [for promotions] shall be conducted in accordance with the provisions of Part X [of the regulations], below, ..." Part X of the regulations includes PCSC Reg. § 10.02(a)–(b).

6. PCSC Reg. § 10.07(b) provides:
(b) *Promotions*—
(1) In accordance with the provisions of these Regulations, promotions shall be made on the basis of a list of eligibles established by the Commission. The list of eligibles shall be established by ranking applicants for promotion in order of merit in accordance with the following formula:
(a) Written examination score (based on a maximum score of 100 points) $\times 0.50 =$ _____

plus

(b) Performance Appraisal score (based on a maximum score of 100 points) $\times 0.30 =$ _____

plus
(c) Seniority—(1⅓ percent for each full year up to fifteen years—adjusted to a maximum score of 100 points) 6.667 $\times$ _____ years $\times 0.20 =$ _____
(2) To the total number of points awarded each applicant in accordance with the above formula, the following adjustments shall be made:
(a) From such score, 0.25 points shall be subtracted for each day of suspension in the past three years and if any applicant has received any one suspension of more than 10 days, an additional 0.25 points shall be subtracted for the 11th and each succeeding day of such suspension.
(b) To such score, 1.0 point shall be added for each official citation or commendation the applicant has received in the past three years, up to a maximum of five points.
(3) The total number of points so calculated, shall constitute each applicant's score.

■ The question which must be decided, however, is whether these regulations of the PCSC conflict with the Police Civil Service Act, *W.Va.Code*, 8–14–6 to –23, as amended. We conclude that they do so conflict and are consequently invalid.

*W.Va.Code*, 8–14–17 [1969, 1986], *see supra* note 3, requires promotions under the Police Civil Service Act to be based upon merit and fitness as shown by (1) competitive written examination, (2) service, i.e., performance appraisal and (3) experience, i.e., seniority.[7] *W.Va.Code*, 8–14–17 [1969, 1986] does not expressly require an applicant for promotion under the Police Civil Service Act to achieve a passing score on the written examination as a condition precedent to evaluation of the applicant's service and experience. Therefore, the question arises as to whether a police civil service commission is authorized to promulgate regulations making a written examination a "screening" examination, where the Police Civil Service Act does not expressly authorize the same.

The Court has held that "[a] police civil service commission created by Article 5A of Chapter 8 of Code, 1931, as amended [the predecessor to *W.Va.Code*, 8–14–6 to –23, currently in effect], has only such jurisdiction and powers as are conferred upon it by statute. It has no inherent jurisdiction or powers." Syl. pt. 3, *State ex rel. City of Huntington v. Lombardo*, 149 W.Va. 671, 143 S.E.2d 535 (1965). *Accord, Spradling v. Hutchinson*, 162 W.Va. 768, 771, 253 S.E.2d 371, 374 (1979). Accordingly, "[t]here must be strict compliance with the Police Civil Service Act, *W.Va.Code*, 8–14–6 to –23, ..." Syl. pt. 4, in part, *Martin v. Pugh*, 175 W.Va. 495, 334 S.E.2d 633 (1985). These principles are a species of the broader principle that a municipality's powers are strictly construed:

A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied.

Syl. pt. 2, *State ex rel. City of Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970). *Accord*, syl. pt. 2, *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E.2d 616 (1985), *appeal dismissed for want of a substantial federal question*, 474 U.S. 1098, 106 S.Ct. 875, 88 L.Ed.2d 912 (1986); syl. pt. 1, *City of Fairmont v. Investors Syndicate of America, Inc.*, 172 W.Va. 431, 307 S.E.2d 467 (1983). Using the language of this line of cases, we believe that there is a "reasonable doubt" as to whether a municipality's police civil service commission has the power to make a written examination a "screening" examination by requiring an applicant taking the examination to achieve a passing score on the same as a condition precedent to further evaluation for promotion.

In *Gartin v. Fiedler*, 129 W.Va. 40, 38 S.E.2d 352 (1946), a case involving promotions under the Police Civil Service Act, the Court was not confronted with the precise issue presented in the present case but "noted that the statute does not provide for a passing grade...." *Id.* 129 W.Va. at 50, 38 S.E.2d at 357. The Court observed that the Act expressly provides for each initial appointment thereunder to be selected from the three persons certified as having

Applicants shall be ranked in accordance with their scores and a list of eligibles constructed therefrom.

PCSC Reg. § 6.09(c) also contains the above weights for the written examination results, performance appraisal and seniority and refers to the adjustments, if any, required by PCSC Reg. § 10.07(b)(2).

**7.** *W.Va.Code*, 8–14–13 [1969] likewise provides, in relevant part, that the competitive examinations are to lead to promotions (or appointments) based upon merit and fitness:

All competitive examinations for appointments or promotions to all positions shall be practical in their character, and shall relate to such matters, and include such inquiries, as will fairly and fully test the comparative merit and fitness of the individual or individuals examined to discharge the duties of the employment sought by him or them. All competitive examinations shall be open to all applicants who have fulfilled the preliminary requirements specified in the other civil service provisions of this article.

received the highest averages on the competitive examinations. The Court recognized that the Act does not have a corresponding "highest grades" provision relating to promotions thereunder, but, as with appointments, refers to merit and fitness. Nevertheless, the Court upheld a regulation of a police civil service commission providing for promotions based upon the *highest* grades on the competitive examinations, in the ratio of one name for each position to be filled by promotion. The Court's rationale was as follows. If, in the matter of initial appointment, the persons certified shall be those receiving the highest averages, then there would be no necessity for a passing grade because whatever the "passing" grade a person might receive under the three highest averages would avail nothing and be wholly immaterial. The regulation in question in that case did nothing more than fairly read into the statute concerning promotions the express provision as to *highest* achievements contained in the statute concerning appointments. Thus, the Court rejected the argument that a passing grade should be adopted for the purpose of promotions under the Police Civil Service Act.

A case which is instructive in deciding the case now before this Court is *Myers v. Township of Redford*, 96 Mich.App. 122, 292 N.W.2d 698 (1980). In that case the statute provided that the minimum passing grade for examinations to determine promotions in a paid fire or police department shall be at least seventy percent. The statute also authorized the municipal civil service commissions to promulgate regulations for competitive examinations. In *Myers* the municipal civil service commission promulgated a regulation assigning the following weights: written examination—fifty percent of the final grade; oral interview—thirty percent; and a performance factor—twenty percent. The written examination was given first and, under the regulations, applicants who failed to score a grade of at least seventy percent thereon were not permitted to take the oral examination or to be rated on their past performance. Although none of the plaintiffs in *Myers* achieved a score of at least seventy percent on the written examination, each of their scores was sufficient to make an overall score of seventy percent possible, if the oral examination were given and the performance rating applied.

The trial court in *Myers* agreed with the position advanced by the plaintiffs and viewed the minimum seventy percent passing grade as intended to apply to the whole of the examination process, that is, the statute was held to require an average grade of seventy percent on the combined scores of the three portions of the examination. The Michigan Court of Appeals affirmed. It agreed with the trial court that the term "examinations" included not only written examinations but all of the modes of determining qualifications and fitness for promotions. In reaching this conclusion the court set forth a rationale which, we believe, applies with even stronger force here because our statute does not mention a passing grade:

> Each of the three portions of the examination evaluates different aspects of the applicant's merit. The examination as a whole is designed to accomplish what none of its individual parts can do, to evaluate the applicant's total ability to meet the requirements of the sought-after position. The test, as a unit, completely encompasses the skills and abilities that the applicant must possess. As none of the test parts, in itself, is an adequate determinant of the applicant's merit, none should be considered to the exclusion of the others. We believe, therefore, that the applicant's performance on all portions of the test establishes a single score upon which the applicant's standing should depend.

*Myers*, 96 Mich.App. at 126, 292 N.W.2d at 700. *Cf. State ex rel. Morris v. King*, 170 W.Va. 646, 647, 295 S.E.2d 811, 812 (1982) (approving, for promotions of police officers, a particular type of performance appraisal; quoting an expert witness' testimony that a written test deals with ability to recall information but tells nothing about performance under actual work conditions); *Daniels v. McCulloch*, 168 W.Va. 740, 743–44, 285 S.E.2d 483, 485–86 (1981) (pro-

motions of certain police officers invalidated due to prejudice caused by failure of police civil service commission to promulgate regulations on competitive examinations; commission considered only written examination results and seniority, and failed to consider work records of applicants, contrary to *W.Va.Code*, 8-14-17 [1969], and either of two applicants not promoted could have received promotions in question if their work records had been considered). In other words, a proper determination of merit and fitness for promotions under the Police Civil Service Act requires consideration of more than the results on the written examination or any other single factor.

If the legislature had intended for the written examination to be a "screening" device, so that an applicant for promotion would have to achieve a passing score on the same as a condition precedent to consideration of the applicant's service and experience, it could have expressly so provided. *See* syl. pt. 2, *Ring v. Fox*, 56 Ohio App.2d 235, 382 N.E.2d 1159 (1977): "Where the rules of a municipal civil service commission in a home rule city authorize separate tests for various skills needed in a given position and forbid a candidate to continue if he fails one test, the results of tests taken subsequent to a failure are void." [8]

The PCSC's reliance upon *Adkins v. Civil Service Commission*, 160 W.Va. 720, 241 S.E.2d 428 (1977), is misplaced. In *Adkins* the State Civil Service Commission had promulgated a regulation providing that a candidate for promotion under the state civil service law must be certified by the Director of Personnel of the State Civil Service Commission to possess the qualifications for the position, and the candidate may be required by the appointing authority to qualify for the new position by promotional competitive or noncompetitive examination administered by the Director.

The appointing authority in that case was willing to promote Mrs. Adkins solely upon the basis of her experience. The Director of Personnel of the State Civil Service Commission insisted that Mrs. Adkins take and pass a written examination in order to qualify for the promotion. Mrs. Adkins twice took and failed the written examination. Thereafter the State Civil Service Commission issued an administrative order refusing to waive the written examination requirement.

Upon appeal to this Court, Mrs. Adkins challenged the authority of the Director of Personnel of the State Civil Service Commission to require her to pass a written examination as a prerequisite to her promotion. This Court held that the Director possessed such authority. The Court observed that the regulation in question did not grant the appointing authority the exclusive power to set or to waive the examination requirement. To the contrary, the regulation specifically required the Director to certify that a candidate for promotion possesses the requisite qualifications for the position. The Court concluded that the Director was authorized to require a candidate for promotion to pass a written examination because the statute and the regulations did not prohibit the same in order to evaluate the candidate's qualifications.

Here, in contrast, *W.Va.Code*, 8-14-17 [1969, 1986] expressly requires promotions to be based upon merit and fitness as shown by *three* factors: (1) competitive written examination, (2) service *and* (3) experience. The statute gives no hint that any one of these factors may be converted into a "screening" device which is utilized to disqualify an applicant for promotion from further evaluation in the promotional process.

---

**8.** A civil service commission of a home rule city in the State of Ohio may promulgate rules and regulations which modify, supplement or supersede the laws of the State of Ohio, and in case of conflict such rules and regulations prevail over the laws of the State of Ohio. *Ring v. Fox*, 56

Ohio App.2d 235, 238, 382 N.E.2d 1159, 1161 (1977). In the State of West Virginia, to the contrary, the statute, as discussed previously, is the preeminent law *vis-a-vis* rules and regulations of a police civil service commission.

■ Based upon all of the above, we hold that the Police Civil Service Act, in particular, *W. Va. Code*, 8–14–17, as amended, requires that the promotions of individuals thereunder are to be based upon merit and fitness to be ascertained by competitive written examination and upon the superior qualifications of the individuals promoted, as shown by their previous service and experience. One of these test factors, in itself, is not an adequate determinant of the applicant's merit and fitness; therefore, it should not be considered to the exclusion of the others. Accordingly, regulations of a police civil service commission which conflict with the statute on this point are void.

In syllabus point 2 of *In re Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971), the Court held:

> The judgment of a circuit court affirming a final order of a police civil service commission, upon appeal therefrom as provided by statute, will not be reversed by this Court unless the final order of the commission was against the clear preponderance of the evidence or was based upon a mistake of law.

*Accord,* syl. pt. 1, *City of Parkersburg v. Skinner,* 176 W.Va. 657, 346 S.E.2d 808 (1986); syl. pt. 1, *Martin v. Pugh,* 175 W.Va. 495, 334 S.E.2d 633 (1985). In the present case the circuit court reached the conclusion that the PCSC possessed the authority to preclude from further consideration all applicants for promotion who fail to achieve a passing score on the written examination. We have reached the opposite conclusion herein. Consequently, the circuit court's final order is based upon a mistake of law and is hereby reversed.[9]

Reversed.

9. The appellants are entitled to be promoted to the rank of corporal as of December 19, 1985, with the annual increase in salary stipulated by the PCSC in its findings of fact numbers 15 and 16. This Court concludes, however, that the appellants are not entitled to recover reasonable attorney's fees. The record indicates that there

NEELY, Justice, dissenting:

I dissent because a reasonable interpretation of *W. Va. Code* 8–14–17 [1986] allows the Police Civil Service Commission to set a minimum level of reading and writing skills as a threshold requirement.

*W. Va. Code,* 8–14–17 [1986] provides in pertinent part:

> Vacancies in positions in a paid police department of a Class I or Class II city shall be filled, as so far as practicable, by promotions from among individuals holding positions in the next lower grade in the department. Promotions shall be *based upon merit and fitness* to be ascertained by *competitive examinations* to be provided by the Police Civil Service Commission *and upon the superior qualification* of the individuals promoted, as shown by their previous service experience. [Emphasis Added]

This Code section is phrased in general language that allows the Police Civil Service Commission the discretion to establish minimum standards in each area. The statute calls for all promotions to be based on "merit," "fitness," and "competitive examinations."

The majority's holding today ignores the importance of literacy in any modern police force. Search warrant affidavits, for example, are difficult to write and provide many traps for the unwary. If a police officer fails to read and *understand* literature relating to recent decisions governing criminal procedure, there is a high likelihood that the prosecution will be deprived of convictions and justice will be confounded. The presiding judge will not take into consideration the policeman's previous service record and experience when he dismisses the charges and allows a criminal to go free.

was a *bona fide* dispute in this case and that the PCSC did not act "'in bad faith, vexatiously, wantonly or for oppressive reasons.'" Syl. pt. 5, in part, *McClung v. Marion County Commission,* 178 W.Va. 444, 360 S.E.2d 221 (1987), *quoting,* syl. pt. 3, in part, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986).

The written examination serves to exclude applicants who may later make errors based on their inability to follow written instructions. I do not find a threshold requirement that all applicants for the position of corporal demonstrate their familiarity with the written law and their ability to execute its commands in a written examination an unreasonable requirement.