375 S.E.2d 572

**Jeanette MASON and Betty Francisco**

**v.**

**CITY OF WELCH; Martha Moore, Mayor of the City of Welch; City of Welch Policemen's Civil Service Commission; Joe Hassan, President of Commission; Otis Jackson, member; and Connie Collins, member.**

**No. 17992.**

Supreme Court of Appeals of West Virginia.

Nov. 21, 1988.

Sarah N. Hall, Welch, for City of Welch.

Norman Googel, APALRED, Welch, for Jeanette Mason and Betty Francisco.

McHUGH, Chief Justice:

This appeal involving the Police Civil

---

Service Act[1] raises the question of whether parking-meter attendants are covered by such Act. We conclude they are not. Believing this question of law was incorrectly decided by the circuit court, we reverse.

## I

The appellant, the City of Welch, West Virginia, has employed appellee, Jeannette Mason, and appellee, Betty Francisco, as parking-meter attendants, referred to in the record as "meter maids," since May, 1972 and January, 1974, respectively. At all relevant times the appellees were supervised by the appellant's chief of police, and the appellees' compensation was paid from funds allocated to the appellant's police department. The appellees' primary duty as parking-meter attendants has been to issue citations for illegal parking occurring on the streets of the city or on city parking lots, or occasionally, in the city parking building.[2] The appellees have thus performed a limited police function of enforcing the city's parking and traffic ordinances.[3]

The appellees direct traffic in the city on the first two or three days of each month and at other times when needed, such as when there are parades, accidents, floods or other problems which cause traffic congestion. They collect money from the parking meters; they provide general assistance to citizens, such as assisting persons whose keys are locked inside their vehicles; and they provide other police support activities as needed. For example, they have occasionally filled in as dispatchers for the police department. They have not, however, performed dispatching work since November, 1984. On a couple of occasions they have been asked to search female suspects because the City of Welch during all relevant times had no female police officers or police matrons.

The appellees wear hats, uniforms, overcoats, patches and badges containing the inscriptions, "City of Welch Police Department" or "Welch Police Officer." At the time they were hired the appellees were administered an oath in the same manner as city police officers.

On the other hand, the appellees have never been granted nor have they exercised general law enforcement powers. They do not have the power to arrest, even for parking violations, and they do not carry a deadly weapon.[4] They have not been trained and certified as police officers, as

1. The Police Civil Service Act is codified as *W.Va.Code,* 8–14–6 to –23, as amended.

2. A Ms. Geneva Rowe, a former parking-meter attendant and now attendant at the city parking building, is the person who usually issues illegal parking citations for violations occurring in such building. Whether Ms. Rowe is covered by police civil service provisions is not before this Court, nor has that question been addressed below.

3. The parties have not identified the source of the parking-meter attendants' authority to issue citations ("tickets") for illegal parking. While we do not decide that question, we note that *W.Va.Code,* 30–29–1 [1984] defines a "law-enforcement officer," for the purpose of requiring training and certification, to mean "any duly authorized member of a law-enforcement agency who is authorized to maintain public peace and order, prevent and detect crime, make arrests, and enforce the laws of the state or any county or municipality thereof, *other than parking ordinances.*" (emphasis added) *W.Va.Code,* 17C–2–8(a)(1) [1963] recognizes the power of local authorities to regulate "the standing or parking of vehicles" on streets and highways

under their jurisdiction. *W.Va.Code,* 8–14–5a [1971] authorizes municipalities to provide by ordinance for special parking lot or parking building police officers with the power to enforce municipal ordinances with respect to such lots or buildings, including arrest powers. *W.Va.Code,* 8–5–11 [1969] delegates to each municipality the power to provide by ordinance for, *inter alia,* the employment and powers and duties of municipal employees, subject to state constitutional and statutory law. Whether any of these or other statutes empower a municipality to employ parking-meter attendants or to authorize parking-meter attendants to issue citations for illegal parking is a question which we need not decide herein.

4. *See* syl. pt. 3, *State ex rel. West Virginia State Lodge, Fraternal Order of Police v. City of Charleston,* 133 W.Va. 420, 56 S.E.2d 763 (1949); syl., *State ex rel. Crouse v. Holdren,* 128 W.Va. 365, 36 S.E.2d 481 (1945). These cases hold that "special" police officers have no inherent power to make arrests or carry deadly weapons but must be granted this power by statute. Moreover, a statute must grant the power to employ a "special" police officer not covered by the Police Civil Service Act.

required since 1981 by *W.Va.Code,* 30–29–1 to –9, as amended. They never applied to be "grandfathered in," that is, they never applied within ninety days after July 9, 1981, to be certified as a "law-enforcement officer" based upon at least five years of experience prior to application in 1981, as required by *W.Va.Code,* 30–29–5(d) [1983].

In July, 1986, city officials, in light of the financial condition of the city, determined that personnel layoffs would be made in the police and fire departments. The appellees were notified at that time that they were discharged from employment. At the time of their discharge the appellees had more job seniority than any of the police officers who were members of the city's police department.

Thereafter the appellees requested a hearing before the city's police civil service commission (the "PCSC").[5] After an evidentiary hearing the PCSC found that the city had "substantially complied" with *W.Va.Code,* 8–14–5a [1971], thereby appointing the appellees as "special parking lot or parking building police officers" and

concluded that, as such officers, the appellees under that statute expressly did not come within the police civil service provisions.[6] The PCSC therefore upheld the appellees' discharge.

The appellees appealed to the Circuit Court of McDowell County. The circuit court reversed the PCSC on the legal question of whether the appellees were "special parking lot or parking building police officers" exempt from police civil service coverage. The circuit court held they were not, as there was no evidence of an ordinance establishing such positions in the city (ordinance records had been burned in a 1979 fire), and the statute requires the "sole" duties of such special parking lot or parking building police officers to be the enforcement of ordinances upon or within municipal parking lots or parking buildings, while the appellees' duties were more extensive, including enforcement of parking ordinances on the city streets and traffic direction on such streets. The circuit court ordered reinstatement of the appel-

---

**5.** The record establishes that the City of Welch had a population in excess of 5,000 in 1937 when the original Police Civil Service Act was enacted. The City of Welch was, therefore, required under the original Act to have a police civil service system and commission. At the time the dispute herein arose, the City of Welch was a Class III city, having a population in excess of 2,000 but not in excess of 10,000. *See W.Va.Code,* 8–1–3(3) [1969]. Under the last paragraph of *W.Va.Code,* 8–14–23 [1969], any class of municipal corporation which had at any time established a police civil service system and commission must maintain a police civil service system and commission regardless of transition from one class of municipal corporation to another class for which a police civil service system and commission would not ordinarily, under the present Act, be mandatory, that is, a Class III city or a Class IV town or village. Accordingly, the City of Welch still has a police civil service system and commission.

**6.** *W.Va.Code,* 8–14–5a [1971] provides:

Every municipality shall have plenary power and authority to provide by ordinance for the appointment of special parking *lot* or parking *building* police officers, whose *sole* duties shall be to patrol, and to enforce municipal ordinances upon or within, designated parking *lots* and parking *buildings* either owned by, or leased to, or under the control of, and operated by, the municipality or any

board, commission or authority created by the municipality. Notwithstanding the provisions of section twelve, article twelve of this chapter, such special parking lot or parking building police officers may be assigned to police a parking facility established, maintained and operated pursuant to the provisions of said section twelve. In the performance of such duties, such special parking lot or parking building police officers shall be vested with the *power to make arrests,* issue summonses, sign complaints and request the issuance of capiases. Such special parking lot or parking building police officers shall be in uniform, shall display a badge or other sign of authority, shall serve at the will and pleasure of the appointing authority, and *shall not come within the civil service provisions of this article* or the policemen's pension and relief fund provisions of article twenty-two of this chapter. The governing body of the municipality may require such special parking lot or parking building police officers to give bond, payable to the municipality, in its corporate name, with such sureties and in such penalty as the governing body may see fit, conditioned for the faithful performance of their duties. The cost of providing such special parking lot or parking building police officers may be paid from revenues derived from the parking lot or parking building to which they are assigned.
(emphasis added)

lees, with full back pay, and refused to consider the question of mitigation of damages.

## II

Rather than being governed by *W.Va. Code*, 8–14–5a [1971], on special parking lot or parking building police officers, the question of coverage of parking-meter attendants under the Police Civil Service Act is governed by *W.Va.Code*, 8–14–6 [1969], which, in the second paragraph thereof, defines "member of a paid police department," for purposes of such Act. A "member of a paid police department" means

any individual employed in a paid police department who is clothed with the police power of the State in being authorized to *carry deadly weapons, make arrests,* enforce traffic *and other* municipal ordinances, issue summons for violations of traffic *and other* municipal ordinances, *and* perform *other* duties which are within the scope of *active, general* law enforcement.

(emphasis added) This statutory definition, added in 1963, is consistent with this Court's restrictive definition of "other employees of said police departments," in *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962).

In *Parkins* the question before this Court was whether parking-meter attendants were covered by the Police Civil Service Act as then worded. An argument was made that the following language of the 1937 predecessor to *W.Va.Code*, 8–14–23 [1969] indicated that parking-meter attendants were covered by such Act: "It is understood and intended by this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, policemen *or other employees of said police departments* [.]"   (emphasis added)[7]

This Court rejected that argument and held that parking-meter attendants did not come within the purview of the Police Civil Service Act. The Court concluded that the Act covered only those persons having powers and duties customarily performed by police officers, such as the right to carry deadly weapons and the right to arrest, neither of which power was possessed by the parking-meter attendants. 146 W.Va. at 1063, 124 S.E.2d at 478.

*Parkins* was also premised upon the rationale that the inclusion of parking-meter attendants under the Act was not warranted because it would be difficult to make a rational application of the promotion provisions of the Act; that is, parking-meter attendants do not fit into the statutory structure of grades or ranks of police officers for the purpose of promotion of such officers. *Id.*, 146 W.Va. at 1060–61, 124 S.E.2d at 476. This rationale is still valid.

The current statutory definition of "member of a paid police department," like *Parkins*, requires the person in question to have *general*, not limited, law enforcement powers.

The only reported case on point from another jurisdiction which our research disclosed is *Commonwealth Human Relations Commission v. Beaver Falls City Council*, 469 Pa. 522, 366 A.2d 911 (1976). The Supreme Court of Pennsylvania held therein that parking-meter attendants were *not* "police officers" who had been discriminated against as such officers on the basis of their sex. Like *Parkins*, the Pennsylvania court distinguished parking-meter attendants from "police officers" on the ground that parking-meter attendants have only limited, specialized law enforcement powers, in that case, specialized traffic regulation duties, occasional assistance in transporting female prisoners and occasional assistance in looking for stolen vehicles.

---

**7.** The current version of the Police Civil Service Act does not contain the general language, "or other employees of said police departments," but, instead, provides coverage to "members of paid police departments": "It is intended by the civil service provisions of this article to furnish a complete and exclusive system for the appointment, promotion, reinstatement, removal, discharge, suspension and reduction of all members of all paid police departments subject to the civil service provisions of this article." *W.Va.Code*, 8–14–23 [1969]. As quoted immediately above in the body of this opinion, *W.Va. Code*, 8–14–6 [1969] defines "member of a paid police department."

Based upon the foregoing authorities, we hold that parking-meter attendants are not "members of a paid police department" as defined in *W.Va.Code*, 8–14–6 [1969] and are, therefore, not covered by the Police Civil Service Act, *W.Va.Code*, 8–14–6 to – 23, as amended.

This Court will reverse a circuit court's ruling in a police civil service case when it is based upon a mistake of law. *See* syl. pt. 3, *Bays v. Police Civil Service Commission*, 178 W.Va. 756, 364 S.E.2d 547 (1987) (and cases cited, 178 W.Va. at 763, 364 S.E.2d at 554). Here the circuit court concluded as a matter of law that the appellees were covered by the Police Civil Service Act. We have reached the contrary legal conclusion. Accordingly, the final order of the circuit court is reversed.

REVERSED.